UNITED STATES v. FRANCIS.

(District Court, E. D. Pennsylvania. April 6, 1906.)

Nos. 44–46.

1. CRIMINAL LAW—NEW TRIAL—GROUNDS.

Where jurors who had read certain newspaper comments were excused from service, and only those selected who had seen none of the articles objected to, the court's refusal to grant a continuance on the day the cause was called for trial, because certain newspapers had published a highly sensational article that morning with reference to the matter in controversy, was not ground for a new trial.

2. SAME—MISCONDUCT OF JURORS.

That one of the jurors during the trial had possession of a newspaper containing a report of the trial of the case, and some incidents connected therewith, which he did not read, and that another juror found a newspaper in the jury room, and read certain matter with reference to the case, which was not prejudicial to defendant, was not ground for new trial.

[Ed. Note.—For cases in point, see vol. 15, Cent. Dig. Criminal Law, § 2252.]

3. SAME—CONSPIRACY—DECLARATIONS OF CONSPIRATORS.

Where, in a prosecution for conspiracy to use the mails in furtherance of a scheme to defraud, in violation of Rev. St. § 5480 [U. S. Comp. St.

1901, p. 3696], the government established a prima facie case of conspiracy, it was then properly permitted to show all relevant declarations of the co-conspirators made in furtherance of the conspiracy, though in defendant's absence.

[Ed. Note.—For cases in point, see vol. 14, Cent. Dig. Criminal Law, §§ 989-1001.]

4. SAME—EVIDENCE—MOTION TO STRIKE.

Where, in a prosecution for conspiracy to use the United States mails with intent to defraud, defendant's counsel, knowing that a person had been arrested for an alleged attempt to bribe one of the government's witnesses, asked her on cross-examination if anyone had offered to "make up to her" the money she had lost, and insisted that she answer the question, which she did, to the effect that a certain party had approached her and offered her money back if she would speak for defendant, defendant was then not entitled to have the answer stricken out and to withdraw a juror.

5. SAME—ARREST DURING TRIAL.

Where, during a criminal prosecution, the government obtained information sufficient to justify the arrest of a person for attempted subornation of one of the government's witnesses, it was proper for the district attorney to cause such arrest to be made without waiting for the termination of the trial.

6. SAME—LIMITATIONS.

Where an indictment charged that defendant and others did, on the 18th day of April, 1904, unlawfully, etc., conspire together to commit an offense against the United States, and the evidence established that defendant came into the conspiracy in October, 1902, while the indictment was found June 15, 1905, the offense was not barred by the three-years' limitation fixed by Rev. St. § 1004 [U. S. Comp. St. 1901, p. 713.]

7. INDICTMENT—ISSUES AND PROOF—PLACE AND TIME OF OFFENSE.

While the time and place of the commission of an offense must be averred, it may be proved to have been committed on any day prior to the finding of the bill during the period of limitations.

[Ed. Note.—For cases in point, see vol. 27, Cent. Dig. Indictment and Information, § 548.]

8. CRIMINAL LAW—VERDICT—EFFECT—LIMITATIONS.

After a plea of not guilty, a general verdict of conviction establishes the fact that the act charged in the indictment was committed within the time fixed by the statute of limitations.

At Law. On motion for new trial.

J. Whitaker Thompson and John C. Swartley, for the United States.

Henry J. Scott and J. Joseph Murphy, for defendant.

HOLLAND, District Judge. When this case was called for trial on the 9th day of October, 1905, the attorneys for the defendant moved for a continuance on the ground that the newspapers had published a highly sensational article that morning about the Story Cotton Company, and commented upon the defendant's connection therewith. A copy of one of the newspapers, said to be the most objectionable, was shown to the court, and the article read. A continuance was refused, but before a juror was selected, he was examined on his voir dire by defendant's counsel, and only those permitted to serve who testified to not having read any newspaper articles relating to the Story Cotton Company, and especially had not

read a copy of the North American of October 9, 1905. Those jurors who had read newspaper comments on either the Story Cotton Company or the defendant that morning were excused from service on the jury, and only those selected who had seen no such articles on that day, and who further qualified as entirely impartial. The first reason is overruled.

In this connection, the sixty-sixth and sixty-seventh reasons should be considered. One of the jurors, during the trial, had in his possession a newspaper of the issue of October 17, 1905, containing a report of the trial of the case, and some incidents connected therewith, but he had not read this article, which was merely a statement of facts known to the juror, and not of that sensational kind which will move the court to conclude, from the article itself, that it would tend to prejudice the jurors against the defendant in the case. It was also claimed that when the jury retired, after the charge of the court, one of the jurors found a copy of the North American in the jury room, left there by a former jury, and that an article in regard to the case appeared therein, in which there was a statement of the progress of the case, and some incidents as to the arrests of other parties the day before in connection therewith. All of the jurors called as witnesses by the defendant, to testify on the question of finding this newspaper in the jury room, showed they had observed the suggestion of the court not to read any newspaper reports of the trial during its progress, with the exception of one, and he claims he read this issue of October 17, 1905, found in the jury room. No other juror knew of the presence of this copy of the paper, and no articles had been read by them. From all the evidence, I am inclined to doubt the presence of the newspaper of that date in the jury room, or that any paper was in the jury room containing matter prejudicial to the defendant. But even if the copy of the newspaper was found, as stated by one of the jurors, and read by him, it did not contain any objectionable matter which would tend to prejudice the defendant's case. Reasons 66 and 67 are overruled.

The defendant, with others, was indicted under section 5440 of the Revised Statutes [U. S. Comp. St. 1901, p. 3676], for conspiring with these others named to commit the crime against the United States prohibited by the section 5480 of the Revised Statutes [U. S. Comp. St. 1901, p. 3696], making it unlawful to use the mails in furtherance of schemes to defraud. The witnesses first called by the government were permitted to testify only to facts and circumstances with which the defendant was connected, and to only such declarations or conversations relating to the matters in issue as were made to or had with the defendant. After a prima facie case of conspiracy had been established by the Government, it was permitted to show all relevant acts and declarations of the co-conspirators done or made in furtherance of the conspiracy, though such acts had been done and such declarations had been made in the absence of the defendant. This is such a well-recognized rule in conspiracy cases that I need only refer to one or two text-book authorities: 4 Elliott on Evidence, § 2939; 1 Elliott, Ev. § 249, and 3 Rice on Criminal Evi-

dence, p. 904, § 578d. An examination of the reasons 2 to 41 inclusive (excepting reason No. 5) will show that they are based upon objections to the testimony of witnesses who were either stating facts with which the defendant had been directly connected, or, after the proof of a prima facie case, acts and declarations in furtherance of the conspiracy clearly admissible. All the reasons are the same so far as to the want of merit. They are all overruled.

Reasons 42 to 57, inclusive, 59, 63, 64, and 65 all raise objection to the charge of the court, and I do not think it is necessary to consider these reasons separately. The charge, as a whole, was a correct statement of the law, and entirely fair to the defendant. None of the reasons can be sustained.

Reasons 5 and 58 may be considered together. The District Attorney, during the trial, came into sufficient evidence to warrant in arresting one Byram for an alleged attempt to bribe Miss Sundheim, a government witness. Counsel for defendant knew of the arrest and the reason therefor. Subsequent to the arrest, counsel for defendant, when cross-examining Miss Sundheim, asked if any one had offered to "make up to her" the sum of $240, which the defunct concern owed her at that time, and counsel insisted upon an answer, which was to the effect that a "certain party had approached her (Miss Sundheim) and offered her her money back if she would speak for Francis." Counsel for defendant moved to strike out the answer and to withdraw a juror. This was refused, and this is assigned as the fifth reason for a new trial, and the fact that the District Attorney arrested Bryam and De Mar during the trial is the fifty-eighth reason. Neither is well taken.

As to the first of these, the answer was the result of the question put by Mr. Scott, and directly in response thereto, and he knew of the facts before Miss Sundheim answered. As to the arrest during the trial, we are of the opinion the District Attorney acted clearly within his right and performed his duty as a prosecuting attorney with due regard to the rights of the defendant. When there is a well-founded charge that witnesses called by the government are being corruptly approached, it is his duty to act, and to say he shall not arrest the offender until the trial has ended would in nearly every case enable the offender to escape arrest and materially interfere with the effective administration of the criminal law. Of course, any abuse of this right to arrest during a trial, established to the satisfaction of the court, would receive such treatment as the circumstances warranted, in order that a defendant be fairly and impartially tried. Reasons 5 and 58 are overruled.

The defendant's counsel urged at the argument for a new trial that the act charged was barred by the statute of limitations, although this question is not raised in any way upon the record. The indictment charges that the defendant and others did on the 18th day of April, 1904, unlawfully, etc., conspire together * * * to commit an offense against the United States. The weight of the evidence was to the effect that the defendant came into the conspiracy in October, 1902. The indictment was found June 15, 1905. An indict-

ment for the offense charged can be found any time within three years next after such offense shall be committed. 'Section 1004, Rev. St. [U. S. Comp. St. 1901, p. 713]. Time and place of commission of the offense must be averred. U. S. v. Britton, 107 U. S. 655, 2 Sup. Ct. 512, 27 L. Ed. 520. But it may be proved to have been committed on any day previous to the finding of the bill during the period within which it may be prosecuted. Wharton's Criminal Pleading and Practice (8th Ed.) § 120; U. S. v. Potter (C. C.) 56 Fed. 97. After a plea of not guilty, a general verdict of the jury establishes the fact that the act charged in the indictment was committed within the statute of limitations. U. S. v. White, Fed. Cas. No. 16,676.

For these reasons, a new trial is refused.