## UNITED STATES v. ANGELO.

No. 8884.

Circuit Court of Appeals, Third Circuit.

Argued Nov. 8, 1945.

Decided Jan. 21, 1946.

Harold Simandl, of Newark, N. J., for appellant.

Edward V. Ryan, of Newark, N. J. (Edgar H. Rossbach, U. S. Atty., of Newark, N. J., on the brief), for appellee.

Before MARIS, GOODRICH, and O'CONNELL, Circuit Judges.

O'CONNELL, Circuit Judge.

Joseph Angelo appeals from the judgment of the District Court of New Jersey sentencing him following his conviction by a jury on the first of two counts of an Information.[1] This count charged that on or

[1] The second count of the Information was dismissed at the trial upon election of the Government counsel owing to material variations in proof.

about January 23, 1944, at Orange, New Jersey, Joseph Angelo "did knowingly, wilfully and unlawfully acquire, possess and control certain counterfeited ration documents, to wit: counterfeited Class C-2 gasoline ration coupons purporting to represent approximately 46,000 gallons of gasoline, in violation of General Ration Order No. 8 as issued by the Office of Price Administration. * * *" We are urged to reverse the conviction on numerous grounds.

Appellant attacks the sufficiency of the Information, asserting that (a) the regulation upon which it is based is invalid; and (b) the alleged counterfeited document is not set forth in haec verba or in substance.

■ We are of the opinion that the questioned regulation, as applied in this particular case, is valid. General Ration Order No. 8 issued by the Price Administrator, sets forth certain prohibitions and penalties. In section 2.5 it provided: "No person shall acquire, use, permit the use of, transfer, possess or control any counterfeited or forged ration document". Section 2(a) (5) of Title III of the Second War Powers Act of 1942 [2] provides for criminal prosecution as follows: "Any person who willfully performs any act prohibited, or willfully fails to perform any act required by, any provision of this subsection (a) or any rule, regulation, or order thereunder, whether heretofore or hereafter issued, shall be guilty of a misdemeanor, and shall, upon conviction, be fined not more than $10,000 or imprisoned for not more than one year, or both."

■■ Appellant concedes a proper delegation of authority to the Price Administrator to promulgate Ration Regulations [3]

but argues that this particular regulation, 2(5), is unconstitutional and otherwise beyond the authority of the Administrator. He contends that it is unconstitutional because it fails to attach a "willing or conscious" quality to the prohibited act of possession. The language of section 2.5 of General Ration Order No. 8 is inept in this regard.[4] However, section 2(a) (5) of Title III of the Second War Powers Act of 1942,[5] under which this prosecution is brought, when read with section 2.5 of General Ration Order No. 8, leaves no doubt that the element of mental awareness of the counterfeit quality of the ration documents is included in the act made criminal. The penal provisions of the basic statute are applicable only to violations of a regulation which are willful. Yakus v. United States, 1944, 321 U.S. 414, 435, 64 S.Ct. 660, 88 L.Ed. 834.[6] Moreover, the Information clearly charges the defendant with "knowingly, wilfully and unlawfully acquiring, possessing and controlling certain counterfeited ration documents". As to the appellant, the acquisition, possession and control were charged to be with wilfullness and consciousness of the fact that the ration coupons were counterfeit. Consequently he has no basis for complaint. Baender v. Barnett, 1920, 255 U.S. 224, 41 S.Ct. 271, 65 L.Ed. 597.

■ We see no merit in appellant's further contention that Congress did not intend to permit a delegation of authority to the Price Administrator to prohibit the counterfeiting of ration documents or their acquisition, possession and control. Section 2(a) (5) of Title III of the Second War Powers Act of 1942 is obviously broad enough to include such powers: see Randall v. United States, 5 Cir., 1945, 148

---

[2] C. 199, Title III, § 301, 56 Stat. 177, 50 U.S.C.A.Appendix § 633 (5).

[3] The basic authority stems from Title III of the Second War Powers Act of 1942, C. 199, Title III, § 301, 56 Stat. 177, 50 U.S.C.A.Appendix § 633. By Executive Order the President delegated this statutory authority to allocate material to the Chairman of the War Production Board who in turn delegated certain authority to the Price Administrator. See Executive Order 9125, Directive No. 1 of the War Production Board.

[4] Section 2.5 of General Ration Order No. 8 was amended on February 5, 1944, to read as follows: "(a) No person shall

acquire, use, permit the use of, transfer, possess or control any counterfeited or forged ration document under circumstances which would be in violation of section 2.6 if the document were genuine *or if he knows or has reason* to believe that it is counterfeited or forged." (Italics supplied.)

[5] C. 199, Title III, Sec. 301, 56 Stat. 177, 50 U.S.C.A.Appendix 633 (5).

[6] Cf. United States v. Tobin, 7 Cir., 1945, 149 F.2d 534, holding that, under the amended section 2.5 of General Ration Order No. 8 quoted in f. n. 4 above, knowledge of the spurious quality of the ration documents is not required under all circumstances as a criminal element.

F.2d 234, 235; cf. United States v. Randall, 2 Cir., 1944, 140 F.2d 70; Henderson v. United States, 9 Cir., 1944, 143 F.2d 681; United States v. Todaro, 2 Cir., 1944, 145 F.2d 977.

We are of the opinion that the Information is otherwise sufficient. Not readily stricken down are Indictments or Informations because of defects in draftsmanship. Since the passage of section 269 of the Judicial Code as amended [7] the true inquiry is whether the substantial rights of the parties have been affected. The "obvious requirements" are "(1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense." Berger v. United States, 1935, 295 U.S. 78, 82, 55 S.Ct. 629, 630, 79 L.Ed. 1314. See also Hagner v. United States, 1932, 285 U.S. 427, 431, 52 S.Ct. 417, 419, 76 L.Ed. 861: "The rigor of old common-law rules of criminal pleading has yielded, in modern practice, to the general principle that formal defects, not prejudicial, will be disregarded"; United States v. Fawcett, 3 Cir., 1940, 115 F.2d 764, 134 A.L.R. 404. In the record is ample demonstration that these "obvious requirements" have been met.[8]

Appellant argues that there was not sufficient proof to sustain a verdict of guilty. A review of the record refutes this argument. If believed by the jury, the testimony of the Government witnesses proved that (a) Angelo sold certain C-2 ration coupons on two occasions on the night of January 22 or 23, 1944, at Orange, New Jersey, to Victor E. Morbedelli; (b) these same C-2 ration coupons were transferred by Morbedelli to a purchaser in Bayonne, New Jersey, who returned them, claiming they were counterfeits; (c) Morbedelli attempted unsuccessfully to return all of the C-2 ration coupons to Angelo, claiming they were counterfeit; (d) Angelo never refunded the Morbedelli money but did accept for a short time certain of the same C-2 ration stamps which he later handed back to Morbedelli; (e) Morbedelli placed these same C-2 ration stamps which were part of those he had originally obtained from Angelo on January 22 or 23, 1944, in a book located in an office shared by Morbedelli and one Edythe Lichtblau; (f) shortly after the same C-2 ration stamps were put in the book, O. P. A. investigators searched the Morbedelli-Lichtblau office in the presence of Miss Lichtblau and seized these same C-2 ration stamps; (g) these same C-2 ration stamps (part of those obtained by Morbedelli from Angelo) were in fact counterfeits of genuine C-2 ration stamps; and finally, (h) Angelo had knowledge of the counterfeit quality of these ration coupons. We realize that the record contains elements contradictory of certain of the above conclusions of fact, but even if we were to disagree with the verdict of the jury we should be without power to reverse, since there was in the Government's proof sufficient evidence to go to the jury. Burton v. United States, 1906, 202 U.S. 344, 26 S.Ct. 688, 50 L.Ed. 1057, 6 Ann.Cas. 362; cf. Henderson v. United States, supra.

There remains for consideration appellant's argument for a reversal on the grounds ranging from asserted erroneous rulings on evidence to alleged misconduct of the trial judge and the Government counsel. The excepted rulings on the evidence will be analyzed first.

In cross examination of Miss Lichtblau and Morbedelli (who incidentally was serving a prison sentence on a guilty plea to a similar Information charging him with the same crime), defense counsel produced four documents, identified as D-1A, B, C, and D. While Morbedelli identified three of the documents as being in his handwriting, he denied that he knew what they represented or what their contents meant. Lichtblau identified one of the documents (D-1B) as being in her hand-

---

[7] 28 U.S.C.A. § 391 and see 18 U.S.C.A. § 556 which provides, "No indictment found and presented by a grand jury in any district or other court of the United States shall be deemed insufficient, nor shall the trial, judgment, or other proceeding thereon be affected by reason of any defect or imperfection in matter of form only, which shall not tend to the prejudice of the defendant * * *."

[8] It is to be noted that appellant did not request a Bill of Particulars and that in a previous conspiracy trial held about eight months earlier, the overt acts charged were similar to the acts charged in the present Information. It is clear that the defendant was sufficiently informed so as not to be "taken by surprise" in the trial of this case.

writing but claimed she was merely an amanuensis for another of her office associates who never explained to her the meaning of the words and figures she wrote. Defense counsel offered these documents in evidence to disprove the identity of the C-2 ration stamps seized in the Morbedelli-Lichtblau office by the Office of Price Administration investigators as being part of the same C-2 ration stamps which Morbedelli obtained from Angelo at Orange. The trial judge admitted the documents but only for the purpose of testing the credibility of these two Government witnesses. In view of the vague, unexplained character of these documents, we believe the trial judge was scrupulously fair to the defense in even admitting these documents into the evidence. The limitation was entirely proper under the circumstances.

In order to prove that the seized C-2 ration stamps (Exhibit G-1) were counterfeit, the Government offered in evidence a sheet of genuine C-2 ration stamps for comparison (Exhibit G-2). The authenticity of the stamps in Exhibit G-2 is not contested. However, appellant contends that Exhibit G-2 represents a sample of the product of but one of three printers who were actually printing the stamps for the Office of Price Administration at that time. The Government put on the stand Weed who qualified as a Government printing expert and testified that the stamps offered as Exhibit G-2 were genuine. Based upon his experience with Office of Price Administration ration document printing, he described the manner in which the genuine ration currency was produced: A master plate was made by the Government Printing Office. From that master plate three patterns were made. The Government Printing Office delivered one pattern to each of the three printers who made as many plates as necessary to print the quantity of stamps ordered. The process assured uniformity of product. In view of this testimony it was not error for the trial judge to admit the sheet of genuine C-2 stamps (Exhibit G-2) for comparison by the jury to determine wheth-

er the seized C-2 ration stamps (Exhibit G-1) were counterfeit. We believe that Exhibit G-2 was a sufficient standard of genuine ration stamps and that it was not necessary, under the circumstances of this case, to produce a sample of genuine ration stamps printed by each of the three printers.[9]

Appellant contends that the trial judge unduly and improperly hampered him in cross examination. The main basis for this contention appears to be in connection with the trial judge's ruling that before defense counsel could contradict Morbedelli and Lichtblau by showing inconsistent statements made by them at a previous trial, it was necessary for cross examining counsel to read from the actual transcript of the previous proceedings the exact questions put and answers made. The trial judge thus required a particular form in which the attempted contradiction was to take place. Defense counsel endeavored to paraphrase the witnesses' previous testimony without reference to the actual transcript. This the court would not allow. Later, defense counsel obtained the notes of the previous testimony and, complying with the judge's ruling, subjected the Government witnesses to severe cross examination. This cured any error that might have existed. Moreover, it has long been held that a condition precedent to a direct contradiction of a witness by what he has said on previous occasions is the laying of a proper foundation: The Charles Morgan, 1885, 115 U.S. 69, 5 S.Ct. 1172, 29 L.Ed. 316. The issue here presented is whether paraphrasing previous testimony constitutes a "sufficient foundation" for the attempted impeachment. We believe that this is a matter for the sound discretion of the trial judge in each particular case. It is his responsibility to control the conduct of the trial to the end that the evidence shall be presented honestly, expeditiously and in such form as to be readily understood.[10] Under the circumstances, we do not believe that the learned trial judge overstepped the bounds of permissible control of the trial; cf. Philadelphia & R. R. Co. v. Bartsch, 3 Cir., 1925,

---

9 Cf. Act Feb. 26, 1913, C. 79, 37 Stat. 683; 28 U.S.C.A. § 638, which governs admission into evidence of specimens of handwriting for comparison purposes. Under this statute, whether a particular specimen shall be admitted into the evidence for comparison by the jury is largely a matter for the determination of the Court: Dean v. United States, 5 Cir., 1917, 246 F. 568; Citizens' Bank & Trust Co. of Middlesboro, Ky., v. Allen, 4 Cir., 1930, 43 F.2d 549.

10 See Rule 105, Model Code of Evidence, A. L. I.

9 F.2d 858, 861, which illustrates the converse of the ruling in this case. In the Bartsch trial, plaintiff's counsel held in his hand what purported to be a statement signed by the witness, asking whether he had not in fact given it to an agent of the plaintiff. This the witness denied. Over objection, counsel read to the witness the whole of the statement, paragraph by paragraph, in the form of questions. Counsel never put the writing into evidence. This procedure was held to be reversible error because, "by contradicting the witness in this fashion the plaintiff got into the record and before the jury matter which was not evidence at all." The difference is that between too much and too little. Here, the trial judge, by requiring counsel to read from the actual transcript of the previous testimony, eliminated the possibility of putting before the jury inaccurate repetition based upon the mere memory of defense counsel of what the witness allegedly stated at a previous trial. In any event, the action of the trial judge not only did not exceed his discretionary powers, but did not harm or prejudice in any way the defendant since full and vigorous cross examination of these same two witnesses on the issue of impeachment was in fact later permitted.

▆▆ We have scrutinized the entire record and are unable to sustain appellant's contention that the manner in which the trial was otherwise conducted was improper and prejudicial to him. Several colloquies between judge and defense counsel ensued as a result of quarreling over rulings of the trial judge. However understandable, we do not commend irritation, irascibility or impatience. Where improper remarks of the trial judge influence the jury and prejudice it against the defendant, it is reversible error on appeal: Lau Lee v. United States, 9 Cir., 1933, 67 F.2d 156; Lambert v. United States, 5 Cir., 1939, 101 F.2d 960. However, the proper administration of justice requires the vesting of discretion in the trial judge. It would be both impossible and undesirable to delimit strictly the powers of the trial judge and to set detailed regulations for the conduct of every case. Discussing the discretionary powers of the trial judge, in Farish Co. v. Madison Distributing Co., 2 Cir., 1930, 37 F.2d 455, at page 459, Judge Learned Hand remarked: "The learned attorney showed an inadequate conception of a judge's proper function, of his power to stop cross-examination, to control and direct the jury, and to prevent the trial from degenerating into a barren battle of words. On the judge rests the chief responsibility for the result; he is the cornerstone of any effective administration of trial by jury, and we are disposed to give him great leeway."

▆▆ We do not think the trial judge took more than the permissible "leeway". Nor do we believe that his remarks to defense counsel prejudiced the jury against the defendant. Whatever unfavorable impression the jury may have received from certain of his remarks, the charge to the jury swept it away. The court very fairly referred to his rulings on motions made by trial counsel, and we conclude that defendant's substantial rights were not adversely affected by the colloquies between trial counsel and the judge in this case.

Nor do we find any impropriety in the Government counsel's conduct of this case: see United States v. Socony-Vacuum Oil Co., 1940, 310 U.S. 150, 239, 60 S.Ct. 811, 84 L.Ed. 1129; Berger v. United States, 1935, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314.

▆▆ The exception to the charge on the ground that the court misused the word "presumption" is untenable. Taken out of context, there might be some basis for this contention. There is none, however, when read in the light of the remainder of the charge.

We conclude that appellant had a fair, impartial trial and in view of our rulings on the points argued, the judgment of the court below is affirmed.