## UNITED STATES v. KATZ.

## UNITED STATES v. MACRI et al.

### Nos. 11577 C.D., 11580 C.D.

District Court, M. D. Pennsylvania.

June 22, 1948.

436

Arthur A. Maguire, U. S. Atty., and Joseph P. Brennan, Asst. U. S. Atty., both of Scranton, Pa., for the United States.

Frank J. McDonnell and Paul A. McGlone, both of Scranton, Pa., for defendant Katz.

Louis Feldman, of Wilkes-Barre, Pa., for defendant Macri.

Thomas J. Foley, of Scranton, Pa., for defendant Butler.

MURPHY, District Judge.

Defendant, Mendel Katz, found guilty by verdict of a jury of violation of the Second War Powers Act of March 1942, 56 Stat. 177, 50 U.S.C.A.Appendix, § 633,[1] involving counterfeit sugar ration stamps and ration checks,[2] moves for a new trial assigning as error the alleged insufficiency of the evidence to support a conviction, and certain alleged irregularities in the conduct of the trial which he asserts amounted to prejudicial error.[3] We find no merit in defendant's reasons. The verdict of the jury must therefore be sustained.

First as to the alleged insufficiency of the evidence: It is not necessary to recount the evidence at length. It is enough to say the jury could have found and, in support of their verdict, we may properly assume did find the following:

Defendant Katz engaged William Recupero[4] as his agent and paid him for services rendered. Katz supplied Recupero with 9900 counterfeit ration stamps and gave him money which he used to induce retail grocers to sign ration sheets containing the counterfeit coupons, representing thereby that they were being used in legitimate trade channels, whereas they were then

---

[1] Section 2(a) (2), "* * * Whenever the President is satisfied that the fulfillment of requirements for the defense of the United States will result in a shortage in the supply of any material or of any facilities for defense or for private account or for export, the President may allocate such material or facilities in such manner, upon such conditions and to such extent as he shall deem necessary or appropriate in the public interest and to promote the national defense."

Sectioin 2(a) (5), "Any person who willfully performs any act prohibited, or willfully fails to perform any act required by, any provision of this subsection (a) or any rule, regulation, or order thereunder, whether heretofore or hereafter issued, shall be guilty of a misdemeanor, and shall, upon conviction, be fined not more than $10,000 or imprisoned for not more than one year, or both."

Section 2(a) (8), "The President may exercise any power, authority, or discretion conferred on him by this subsection (a), through such department, agency, or officer of the Government as he may direct and in conformity with any rules or regulations which he may prescribe."

[2] General Ration Order No. 8 promulgated by the Office of Price Administration pursuant to the Second War Powers Act, note 1 supra, issued March 25, 1943, effective April 15, 1943. See 8 F.R. 3783. United States v. Angelo, 3 Cir., 1946, 153 F.2d 247; Frederick v. United States, 9 Cir., 1947, 163 F.2d 536, certiorari denied 332 U.S. 775, 68 S.Ct. 87, 92 L.Ed. 25.

Sec. 2.5. Acquisition, use, transfer or possession of counterfeited or forged ration document. No person shall acquire, use, permit the use of, transfer, possess or control any counterfeited or forged ration document.

Sec. 2.6. Acquisition, use, transfer or possession of ration document. No person shall acquire, use, permit the use of, transfer, possess or control a ration document except the person or the agent of the person to whom such ration document was issued or by whom it was acquired in accordance with a ration order or except as otherwise provided by a ration order.

[3] Defendants Anthony C. Macri and Earl Butler before trial plead guilty to the two counts in Case No. 11580.

[4] William Recupero plead guilty to the charges in five indictments and was sentenced to five terms of one year each to run consecutively. The Attorney General designated Danbury Correctional Institution at Danbury, Connecticut, as the place of serving the sentence.

presented by Recupero to wholesale sugar dealers using Katz' money to obtain sugar for Katz. 49,500 pounds of sugar thus obtained were shipped out of this district to a place designated by Katz in Newark, New Jersey.

In Indictment 11580, the evidence showed that Katz gave to defendant Butler 1100 counterfeit sugar ration stamps and a forged ration check for 25,000 pounds of sugar together with money to obtain sugar for Katz. Butler gave the stamps, checks and money to defendant Macri who turned them over to a dealer named Walter Dalon. When the sugar was not forthcoming because the ration stamps and checks were spurious, Katz and Butler went to Macri, and later to Dalon, demanding the return of the stamps, checks and money or their equivalent in sugar.

The defendant did not testify in his own behalf. The evidence showed statements by Katz to Butler in Recupero's presence revealing his participation in the attempt to obtain sugar from Dalon. Recupero testified as to having seen the forged check in Katz' possession. Defendant admitted his participation in the transactions with which he was charged to Joseph Recupero, a brother of William Recupero.

Just as the testimony was about to close, the government requested permission to reopen their side of the case and to present evidence which we received showing that during an evening recess of the trial the defendant went to the home of Joseph Recupero and endeavored to induce him to go to his brother, William Recupero, and offer him $2000 if he would testify falsely at the trial next morning in defendant's behalf. This testimony of Joseph Recupero was corroborated by that of his wife, Janet Recupero.

The testimony of William Recupero was corroborated by the testimony generally, the various documents, the several merchants, by defendant Macri, the witness Dalon, as well as by the conduct of the defendant in attempting to commit bribery and suborn perjury in relation to the instant trial.

■ If the jury believed William Recupero, and we may assume from their verdict that they did, he was Katz' agent in these transactions. Katz was therefore bound by Recupero's conduct in carrying out Katz' plans and designs. Richardson v. United States, 3 Cir., 1910, 181 F. 1; Morgan v. United States, 5 Cir., 1945, 149 F.2d 185, certiorari denied 326 U.S. 731, 66 S.Ct. 39, 90 L.Ed. 435; Garber v. United States, 6 Cir., 1944, 145 F.2d 966 at 969; Cr.Code, § 332, 18 U.S.C.A. § 550.

We instructed the jury that they should determine whether or not William Recupero was an accomplice and that if they found him to be an accomplice they should scrutinize his testimony with great caution; that it was usually best to have the testimony of an accomplice corroborated by further testimony that may indicate its truthfulness.

On cross examination defense counsel developed that William Recupero had previously testified under oath at variance, in some particulars, with the testimony given in court. The witness attempted to justify this variance by stating that he had so testified previously because his life had been threatened by the defendant and other reasons, the details of which are outlined in the record. We do not repeat them in extenso at this point.

On further cross examination by defense counsel it appeared to the court that the colloquy was about to produce a charge against defense counsel himself. When we observed that defense counsel persisted in this line of questions we insisted upon an offer at side bar. The result of the side bar conference was to produce a most delicate situation involving one of defense counsel, the details of which are spelled out in the record. See the language of Goodrich J. in United States v. Thomas B. Ward, Jr. etc., 3 Cir., 168 F.2d 226, "We will not perpetuate the memory of incidents that are better forgotten by reciting them in detail." We ordered that this line of questioning be discontinued so as to prevent development of a collateral issue, to prevent a possible mistrial, and certainly to insist that defendant be tried only on the charge before us and to see that he received a fair and impartial trial represented by counsel, a right guaranteed him

by the Constitution of the United States.[5] Counsel now complain of the manner in which the court called for the offer. The reason assigned quotes the sentence out of context. The record will show the court's only interest was to see that the defendant received a fair and impartial trial on the charge then before the jury.

■ Even a convicted perjurer may testify competently. The jury must determine his credibility. The court must charge that the testimony of such a witness must be scrutinized with care.[6] Biggs J. in United States v. Margolis, 3 Cir., 1943, 138 F.2d 1002, 1004. See III Wharton Criminal Evidence, Section 1424, p. 2332; Commonwealth v. Mazzarella, 279 Pa. 465, 124 A. 163. The argument accepted during the 1600's and 1700's that one who came to the stand to testify that upon a former oath he had sworn falsely was as a self-confessed perjurer incapable of trust is no longer accepted as sound. "The doctrine by the 1800's came to be entirely repudiated." Section 527 Wigmore on Evidence, 3d Ed., citing L.C.J. Ellenborough in R. v. Teal, 9 East 307.

The words of Mr. Justice Sutherland in United States v. Manton, 2 Cir., 1938, 107 F.2d 834 at 843 are pertinent. "It is true that * * * in the main, the evidence tending to show Manton's partnership in the conspiracy came from the lips of convicted co-conspirators and other witnesses of bad or dubious character. Indeed, in a case like this, it is unlikely that it would be otherwise. But the credibility of these witnesses and the weight to be given their testimony, as we have already said, were questions for the jury and are matters beyond the scope of judicial review."

■ The evidence as to the attempt to bribe a witness and to suborn perjury was clearly admissible. Evidence of the misconduct of a party in connection with the trial of his case is admissible as tending to show that the party guilty of the misconduct is unwilling to rely on the truth of his cause. McHugh v. McHugh, 186 Pa. 197, 40 A. 410, 41 L.R.A. 805, 65 Am. St.Rep. 849. This doctrine is applicable to criminal proceedings. Commonwealth v. Brown, 23 Pa. Super. 470-502; Commonwealth v. Marion, 232 Pa. 413 at 423, 81 A. 423, a case where the defendant authorized and directed another to make the solicitation for him. Commonwealth v. Spardute, 278 Pa. 37 at 43, 122 A. 161; McMeen v. Commonwealth, 114 Pa. 300, 306, 9 A. 876; Commonwealth v. Lettrich, 346 Pa. 497, 31 A.2d 155; Gung You v. Nagle, 9 Cir., 1929, 34 F.2d 848, 850. See Section 278 Wigmore, 3d Ed., p. 120 and cases cited. "So, if you can show that a plaintiff has been suborning false testimony, and has endeavored to have recourse to perjury, it is strong evidence that he knew perfectly well his cause was an unrighteous one. I do not say that it is conclusive; * * * but it is always evidence." Moriarity v. R. Co., L.R. 5 Q.B. 319; see also Shaw C.J. in Commonwealth v. Webster, 5 Cush. 295, 316, 59 Mass. 295, 52 Am.Dec. 711.

We have previously referred to the incident relative to the cross examination of a government witness by defense counsel. During the course of the trial several other incidents arose as to the conduct of one of defense counsel; during the questioning of the jurors on their voir dire, the marking off of the official list of those jurors who were challenged, during the cross examination of government witnesses and at other times throughout the trial. See United States v. Thomas B. Ward, Jr. etc., supra.

In cross examining a co-defendant who was testifying as a government witness defense counsel inquired as to defendant

---

[5] A charge subsequently laid against one of defense counsel was tried before a judge and jury and at the close of the defendant's case on May 21, 1948, the court directed a judgment of acquittal.

Tried therewith was a charge against the defendant Katz of endeavoring to corruptly influence William Recupero in the above captioned cases. He was convicted by verdict of a jury May 21, 1948, of violation of 18 U.S.C.A. § 241. His motion for new trial thereon denied by the trial judge, Follmer J.

We withheld writing this opinion until the outcome of the foregoing.

[6] For a discussion of the modification of the common law rule as to proof of perjury, see United States v. Margolis, 3 Cir., supra, 138 F.2d 1002 at 1003.

having been acquitted at a previous trial on a separate and distinct charge.[7] Defense counsel thus injected the fact that defendant had been charged with another crime. It should not have been developed. We excused the jury and admonished defense counsel. The jury was then recalled and instructed that defendant was to be tried on the charge before them and that charge alone.

At the beginning of the afternoon session of court on the following day, defense counsel moved for the withdrawal of a juror because the Scranton newspapers carried a report of the court's remarks and admonition to defense counsel. There was no proof or offer of proof in any manner that any of the jurors had read, seen or heard of the newspaper accounts in question. In view of our previous instruction to the jury at the close of day not to discuss or to permit discussion of the case in their presence and if such an attempt to discuss did occur to report it to the court, and further in view of the absence of any affidavits or request by counsel to question or to have the court question the jury as to their possible knowledge of the newspaper accounts, and the possible effect any such knowledge would have on their acting as fair and impartial jurors, we denied defendant's motion for withdrawal of a juror. In this there was no error. Generally as to this question see United States v. Reid, 12 How. 361, 53 U.S. 361, 13 L.Ed. 1023; Van Riper v. United States, 2 Cir., 1926, 13 F.2d 961, certiorari denied in Ackerson v. United States, 273 U.S. 702, 47 S.Ct. 102, 71 L.Ed. 848. Cf. Beard v. United States, 1936, 65 App.D.C. 231, 82 F.2d 837, certiorari denied 298 U.S. 655, 56 S.Ct. 675, 80 L.Ed. 1382 (where affidavits of jurors were considered).

Where there was no evidence to show the jurors were influenced by newspaper accounts in the slightest respect, see Tinkoff v. United States, 7 Cir., 1937, 86 F.2d 868 at 879; Paschen v. United States, 7 Cir., 1934, 70 F.2d 491; Bratcher v. United States, 4 Cir., 1945, 149 F.2d 742, 746, certiorari denied 325 U.S. 885, 65 S.Ct. 1580, 89 L.Ed. 2000; Langer v. United States, 8 Cir., 1935, 76 F.2d 817, 827; United States v. Francis, D.C.E.D.Pa.1906, 144 F. 520; United States v. Ogden, D.C. E.D.Pa.1900, 105 F. 371.

In United States v. McKee, Fed. Cas. No. 15,683, 26 Fed.Cas. 1101 at page 1104, the jury was instructed not to read newspapers and there was no evidence that the paper which was available to them had been read. Pertinent also are Commonwealth v. Flood, 302 Pa. 190 at 196, 197, 153 A. 152, and Commonwealth v. Heffelfinger, 82 Pa.Super. 351 at 353. The burden was upon counsel for defendant to show that prejudice had resulted.[8]

Defense counsel complain because they were not permitted to challenge the moral character of a government witness, there being no evidence of any conviction, indictment or arrest as to the charges in question. The rule generally applied by Federal Courts in criminal cases is that a witness may be impeached only by convictions for felony or misdemeanors amounting to crimen falsi. United States v. Montgomery, 3 Cir., 1942, 126 F.2d 151; N.L.R.B. v. Baldwin Locomotive Works, 3 Cir., 1942, 128 F.2d 39 at 46. Inquiry may not be made as to previous arrest. Mitrovich v. United States, 9 Cir., 1926, 15 F.2d 163. The court has a duty to protect the witness from questions which go beyond the bounds of proper cross examination merely to harass, annoy or humiliate him. Alford v. United States, 1931, 282 U.S. 687, 694, 51 S.Ct. 218, 220, 75 L.Ed. 624.

As to the defendant's reason relative to letters' written by the witness Recupero to "government officials", the court feeling that the entire matter should be made a public record insisted upon the subject being developed so that there would be no insinuation or intimation, particularly in view of the statement of defense counsel that he was attempting to develop the inference that the Attorney General had done something improper. We feel that defense

---

[7] The record in this case was reviewed in United States v. Leonard Berger, 3 Cir., 1948, 165 F.2d 217.

[8] Only one of the 12 jurors resided in Lackawanna County.

counsel, as an officer of the court, once having opened the subject on cross examination should have developed it. Upon his failure to do so government counsel clarified the matter in the record. The exhibits, although made part of the record, were not sent out with or shown to the jury.

As to permitting the government to show that the trial of the defendant at Harrisburg was a separate and distinct charge from that upon which he was being tried, a defendant in a criminal case cannot complain of error which he himself has invited. Shields v. United States, 3 Cir., 1927, 17 F.2d 66. Since defense counsel had time and again gone into the Harrisburg trial, it was essential to show the jury that the acquittal in that case was on a separate and distinct charge.

Defense counsel having gone into the contents of a previous statement of a witness, the doctrine of completeness required that the entire statement be produced. See Philadelphia & R. Ry. Co. v. Bartsch, 3 Cir., 1925, 9 F.2d 858. Cf. United States v. Angelo, 3 Cir., 1946, 153 F.2d 247. See Wigmore on Evidence, 3d Ed., Section 2113, 22 C.J.S., Criminal Law, § 769, page 1316; United States v. Maggio, 3 Cir., 1942, 126 F.2d 155, 160, certiorari denied 316 U.S. 686, 62 S.Ct. 1275, 86 L.Ed. 1758; Affronti v. United States, 8 Cir., 1944, 145 F.2d 3 at page 7, "Another exception to the general rule is that if some portions of a statement made by a witness are used on cross-examination to impeach him, other portions of the statement which are relevant to the subject matter about which he was cross-examined may be introduced in evidence to meet the force of the impeachment."

An examination of the complete record will show meticulous care on the part of the trial judge to see that the defendant had a fair and impartial trial and to exclude all collateral matters from the jury's consideration. See Frederick v. United States, 9 Cir., 1947, 163 F.2d 536 at 548, quoting from Goldstein v. United States, 8 Cir., 63 F.2d 609, 613, as follows: "An appellate court should be slow to reverse a case for the alleged misconduct of the trial court, unless it appears that the conduct complained of was intended or calculated to disparage the defendant in the eyes of the jury and to prevent the jury from exercising an impartial judgment upon the merits." See Glasser v. United States, 1942, 315 U.S. 60, 83, 62 S.Ct. 457, 470, 86 L.Ed. 680.

We find nothing in the defendant's assignment of errors warranting us in disturbing the verdict of the jury. An order will therefore be handed down this date denying defendant's motion for new trial.