## UNITED STATES v. MARCUS.

### No. 9388.

Circuit Court of Appeals, Third Circuit.

Argued Oct. 7, 1947.

Decided Jan. 27, 1948.

As Amended Feb. 19, 1948.

498

Harold Simandl, of Newark, N. J., for appellant.

Grover C. Richman, Jr., Asst. U. S. Atty., of Camden, N. J. (Edgar H. Rossbach, U. S. Atty., of Newark, N. J., on the brief), for appellee.

Before BIGGS, ALBERT LEE STEPHENS and MARIS, Circuit Judges.

ALBERT LEE STEPHENS, Circuit Judge.

Percy S. Marcus was indicted for the violation of Title 18 U.S.C.A. § 207, and was charged with the acceptance of a bribe of $600 while acting as an officer of the United States for the Office of Price Administration. The case was tried in the United States District Court for New Jersey to a judge and jury.[1] The accused was found guilty, was sentenced, and he appeals.

Appellant was employed as an Acting Supervising Investigator in the Office of Price Administration, and under the direction of a superior accompanied two others to ascertain whether automobile dealers were complying with regulations requiring the posting of ceiling prices upon automobiles offered for sale.

There is evidence to the effect that on February 27, 1946, appellant noticed sev-

[1] All places mentioned or referred to herein are within the State of New Jersey.

eral cars on the front of the Mann Motor Sales lot in Camden, marked "sold." Marcus asked Harry Mann, the proprietor, if he could buy one of them, and was informed that they belonged to a southern dealer, but that if he would pay two or three hunderd dollars over ceiling registration, Mann could contact the dealer and let him know about it. Marcus testified, that thereupon he requested that the cars marked "sold" be moved to the back of the lot. Mann denied this, and testified that Marcus displayed his badge and charged that some of the cars were not posted and ordered Mann to appear in Newark on the following Tuesday.

Mr. Mayhew, sales manager for Mann Motor Sales, secured hotel accommodations at White Way Inn for appellant, and the two drove to the Inn, where they were joined by another couple at dinner. Appellant payed for the dinner. and went to his room. A little later Mayhew went to appellant's room to pay his share of the check and to ascertain something as to appellant's status. Although it is denied by appellant, Mayhew testified that appellant talked about an injunction that had been previously obtained against Mann Motor Sales for a prior violation. Whereupon Mayhew asked if he had to go to Newark, and the answer was, "I guess you do." Mayhew then asked, "What do you want, $50.00?" to which appellant answered, "It's only peanuts." Mayhew then asked, "What do you want?" The answer was, "$500.00." Mayhew inquired as to where he, Mayhew, came in, and appellant said to make it $600, and he could have $100 of it. Appellant suggested that Mayhew should call Mann down right away, and Mayhew replied that he couldn't reach him. Mayhew then left for Camden and related the happenings to Mann.

The testimony reveals two versions of what took place the next day. The government's version, as told by Mann and Mayhew, is as follows: Mayhew went to Mann's place of business and verified appellant's position with the OPA. Upon receiving a telephone call from appellant as to how Mayhew had made out (listened to by Mann on a telephone extension), Mayhew, at appellant's request, made arrangements for Mann to meet appellant in an automobile at a given place on the road alone. When Mann met him, appellant said, "I want $600.00, or I can close you up because you got an injunction." Mann says he was "scared" and gave it to him. A few minutes later Mayhew saw appellant, and asked, "What happened, Mr. Mann said you didn't want anything * * * He didn't have to pay nothing." Appellant answer, "I got fixed up all right," and he thereupon put $100 in Mayhew's pocket. Later, appellant telephoned Mann, and speaking in Jewish, said: ·"You talk too much," and Mann answered, "I don't talk nothing." Later, appellant and Mann, at the former's suggestion, met, and Marcus returned the $600.

Appellant, in testifying to his activities of that day, claims that he did not call Mann Motors, nor did he see anyone connected with it. Rather, he says, he drove to Camden and stopped at Merlin Motors, visited for awhile and breakfasted with the manager, Mr. Maxwell, all of which occurred at the time when he was allegedly with Mann. Appellant says he then returned to Newark with two other investigators, and denied that he had any transaction or conversation with Mann concerning payment of money. Mr. Maxwell, of Merlin Motors, corroborated appellant's testimony as to their meeting, as also did Chester Earle, Merlin sales manager. Both of these men had known appellant for several years.

### The Indictment.

■ The first question on appeal is whether the trial court erred in ruling that the indictment sufficiently charged a violation of Title 18, U.S.C.A. § 207.

Before proof was taken, a motion to dismiss the indictment was made, and the motion was received at the close of the government's case, and at the close of the entire case, and each time it was denied. A motion in arrest of judgment was made and denied upon the same grounds.

**500**

We quote the material part of the indictment in the margin.[2]

It is argued that the indictment imports that Mann parted with the money unwillingly and involuntarily, which, in effect, charges the offense of extortion under 18 U.S.C.A. § 171 rather than bribery under 18 U.S.C.A. § 207. The section relating to "extortion" does not define the crime, but merely indicates the class of persons to which it applies and provides the penalty for its commission. It is profitless to analyze the elements of the crime of extortion, since the indictment specifically sets out that the charge is that of bribery as defined by the United States code and uses the words of the specified code section in its charging part. The code section provides that any person within the section who *asks, accepts and receives* money is guilty of bribery under the section, and the indictment uses the same terms in its charge. We hold that the indictment properly charges the crime of bribery so far as the point under treatment is considered. We quote the material part of the section in the margin.[3] See United States v. Sutter, 7 Cir., 160 F.2d 754.

■ Appellant also made a motion in the district court to dismiss the indictment for the reason that it fails to sufficiently allege that he was a "person acting for or on behalf of the United States, in any official capacity" as required by the statute, citing Kellerman v. United States, 3 Cir., 295 F. 796. The cited case holds that under the statute on bribery, the offender must be alleged to be an officer of the United States or that he is a person acting for or on behalf of the United States in an official function. The court therein stated that since it was not alleged that the accused was an official of the United States, the facts must be alleged from which it may be deduced that the accused was acting for or on behalf of the United States in an official function to be a good indictment. The court, page 799, of 295 F., says: "Sterner, a 'United States Customs Storekeeper,' was acting 'under (and) by authority of the (Treasury) Department of the' United States;" and concluded that since the indictment did not allege that Sterner was either an officer of the United States or a person acting in its behalf in an official function, this averment did not disclose whether he came within or stands outside the particular class of government employees which the statute contemplates. The rule of the case is (page 799 of 295 F.), that " * * * the office or the official function of the one to whom the bribe was offered, as a person within the class·

[2] The charging part of the indictment reads as follows: " * * * Percy S. Marcus so being an officer and employee of the Office of Price Administration, did wilfully, corruptly, unlawfully and feloniously for the sake of gain and contrary to the duties of his office and under color thereof did ask, accept and receive from the said Harry Mann the sum of $600 and did then and there charge that in his examination and investigation of the activities of the said Harry Mann, operating as Mann Motor Sales as aforesaid, he had discovered that the said Harry Mann had violated the regulations of the Office of Price Administration as aforesaid with relation to the sale and purchase of new and used automobiles, but if the said Harry Mann would pay to him, the said Percy S. Marcus, the sum of $600, that he, the said Percy S. Marcus would not report the said violations to the proper officers and officials of the Office of Price Administration, to the proper officers of the United States or to anyone else and that he would not recommend prosecution or any other action against the said Harry Mann with respect thereto."

[3] "Whoever, being an officer of the United States, or a person acting for or on behalf of the United States, in any official capacity, under or by virtue of the authority of any department or office of the Government thereof; or whoever, being an officer or person acting for or on behalf of either House of Congress, or of any committee of either House, or of both Houses thereof, shall ask, accept, or receive any money, or any contract, promise, undertaking, obligation, gratuity, or security for the payment of money, or for the delivery or conveyance of anything of value, with intent to have his decision or action on any question, matter, cause, or proceeding which may at any time be pending, or which may by law be brought before him in his official capacity, or in his place of trust or profit, influenced thereby, shall * * * " suffer the penalty provided. 18 U.S.C.A. § 207.

described by the statute, are facts which must be alleged in the indictment and proved upon the trial."

In the instant case it is alleged in the indictment "That during the months of February and March in the year 1946, one Percy S. Marcus was an officer of the United States, to wit, District Enforcement Supervisor, Automotive Unit, Rent and Durable Goods Enforcement Section of the Office of Price Administration, duly appointed and acting under the authority of the Office of Price Administration of the United States and the laws of the United States relating to the appointment, compensation and duties of officers and employees of the Office of Price Administration and assigned to duty in the State of New Jersey in the examination and investigation of persons, firms and corporations engaged in or operating businesses subject and amenable to the regulations promulgated by the Office of Price Administration with relation to the sale and purchase of new and used automobiles." There is then set out in detail the duties the accused was pursuing when, according to the allegations, he accepted a bribe for influencing him in such duty.

■ The appellant's office and duties, as alleged in the indictment, brings him within the scope of the statute, to-wit: "an officer of the United States, *or* a person acting for or on behalf of the United States, in any official capacity, under or by virtue of the authority of any department or office of the Government thereof * * *." (Emphasis ours, the statute is in the disjunctive.) The Kellerman case, supra, is not authority for the position taken by appellant. The specific words of the statute need not be used in the indictment. In Hagner v. United States, 285 U.S. 427, page 431, 52 S.Ct. 417, page 419, 76 L.Ed. 861, the court states: "The rigor of old common-law rules of criminal pleading has yielded, in modern practice, to the general principle that formal defects, not prejudicial, will be disregarded. The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.'" See United States v. Polakoff, 2 Cir.,112 F.2d 888, 134 A.L.R. 607; Hopper v. United States, 9 Cir., 142 F.2d 181; Roberts v. United States, 4 Cir., 137 F.2d 412; and United States v. Angelo, 3 Cir., 153 F.2d 247.

■ It is argued that an "officer of the United States" within the statute is one who is appointed by the President et cetera, or by the courts, or by the head of some executive department of the government, and the appellant cites cases. It is also stated that the head of a department means a member of the President's cabinet and not a mere bureau head. This, however, is a question of proof as to whether he actually was an officer or whether he was performing an official function within the meaning of the statute.

■ The next contention is that the indictment fails to state that appellant accepted the bribe with intent to have his official action influenced thereby. Where an indictment alleges facts which set forth the elements of the offense though it is not done in the words of the statute, such indictment is sufficient in law. The statute requires that the asking, accepting or receiving of money, etc., be done "with intent to have his decision or action on any question, matter, cause, or proceeding which may at any time be pending, or which may by law be brought before him in his official capacity, or in his place of trust or profit, influenced thereby." The alleged facts in the questioned indictment are ample from which the inference of intent may flow. See Pettibone v. United States, 148 U.S. 197, 13 S.Ct. 542, 37 L. Ed. 419; Hagner v. United States, supra.

*Proof of the Indictment.*

The next issue raised on appeal is that the court erred in ruling that the government had sufficiently established violation of Title 18, U.S.C.A. § 207, and in submitting that issue to the jury. The question arises whether the proof presented established the offense as charged.

The jury was told by the court that the indictment charged a violation of the statute in question, and that it was its duty to determine whether the government had established the facts charged, beyond a reasonable doubt.

The appellant argues that extortion and not bribery was proven, since the testimony, such as it was, only showed that the defendant, by use of his official position, compelled Mann to unwillingly part with his money; to prove bribery, it must be established that Mann voluntarily parted with his money.

The contention is based upon the testimony of Mann, that appellant said to Mann, "I want $600.00, or I can close you up or you get a—because you got an injunction. * * * He told me if I don't give him the $600.00, he would close me up because I had an injunction. I got scared and gave it to him."

It is well to note that there is credible testimony that Mann had the $600.00 when he met appellant, which accorded with the testimony that appellant and Mayhew had conversed in the hotel as follows: "Q. What was said? A. About being an injunction against it and how hard it would be if anything should happen, have to go to Newark and all that kind of stuff. I [Mayhew] asked him [appellant], 'What do you want—$50.00?' He said that was only peanuts. I said, 'What do you want?'

He said $500.00, so I said, 'Where do I come in?' He said, 'Make it $600.00 and I will give you $100.00.'" Here is direct testimony that appellant *asked* for the money, and the asking was in effect repeated if Mann's testimony was correct about what occurred when appellant and Mann met in the automobile. There, according to the testimony, appellant *received* the money.

■ The evidence is well believable that Mann found himself in circumstances from which he would pay well to be exculpated. Appellant was well advised of the situation, and, if Mayhew and Mann are to be credited, Mann was quite willing to go forward with the deal concocted by appellant and Mayhew. The gain to Mann was to be helped out of his predicament, and there is room enough for the jury to judge that the money was not paid *unwillingly* or *involuntarily*. Mann was willing to buy what he very greatly desired. Appellant, it seems, could deliver. In the circumstances both were willing tradesmen in the despicable bargain according to the testimony of Mann and Mayhew. We find that the conviction under the bribery statute was lawful. See United States v. Harned, D.C., 43 F. 376, 377.[4]

It is urged by appellant that it was not sufficiently alleged or proved that he was an officer of the United States. The point has already been discussed, that the allega-

---

[4] In Daniels v. United States, 9 Cir., 17 F.2d 339, 342, 343, cited by appellant, the court states that "Extortion is the taking or obtaining of anything from another by means of illegal compulsion or oppressive exaction * * * . * * * 'The distinction between bribery and extortion seems to be that the former offense consists in offering a present or receiving one, the latter in demanding a fee or present by color of office.'" In United States v. Sutter, 7 Cir., 160 F.2d 754, 756, also cited by the appellant, the court holds that at common law a public employee using his office or acting under color of office to demand and receive money to which he was not entitled, was guilty of extortion. However, the court explains that federal crimes are defined by Congress and there are no common law crimes within the jurisdiction of the federal government. Words not defined by the statute, the trial judge states, are to be treated as used in their common ordinary sense as distinguished from the sense in which they were known at common law. It was determined that extortion as used in its ordinary meaning implies use of fear illegally, by force, threats, or other undue powers. That is, at common law, color of office took the place of threats, force or pressure as used in the ordinary meaning of the word extortion. Under the statute of extortion more is required than at common law, that is, official position plus the use of actual extortion. An officer to be guilty of extortion must use his official office to place another under compulsion of fear, force, or undue exercise of power so that such a person parts with something of value unwillingly. Thus, it is the oppressive use of official position that is the essence of extortion.

tion in the indictment was insufficient, and has been decided. The question now is whether it was proven.

It is contended that "an officer of the United States," within the meaning of the statute, is one appointed by the President by and with consent of the Senate, or by the President alone, the courts of law or the head of some executive department of the government; that the head of a department means one of the members of the President's cabinets and does not include a bureau head. Further, it is argued that there likewise is no proof that he was acting for or on behalf of the United States in an official capacity as required by the statute.

The ultimate facts on the narrow issue are alleged in the indictment, and there is ample evidence in the record in support. The testimony elicited from members of the OPA establishes that appellant was an officer appointed by the OPA department head, and describes his duties as an acting supervising investigator.

The next step in proof is whether there was sufficient evidence in support of the allegations that appellant, as an officer of the OPA, was an officer of the United States within the meaning of the statute.

We agree to the proposition that an officer of the United States is one appointed by the President by and with advice and consent of the Senate, or by the President alone, the courts of law or the head of some executive department of the government. See Art. II, section 2, of the Constitution. The defendant was not appointed by the President, hence the immediate inquiry is whether the party appointing him was the head of a department.

In United States v. Germaine, 99 U.S. 508, 510, 25 L.Ed. 482, the court in referring to Art. II, section 2 of the Constitution, states that "The clause we have cited is to be found in the article relating to the Executive, and the word as there used has reference to the subdivision of the power of the Executive into departments, for the more convenient exercise of that power." In the instant case the steps are as follows: The President was given power under the Emergency Price Act to appoint the Price Administrator, by and with advice and consent of the Senate; the Price Administrator was to direct the Office of Price Administration set up by Congress, and to receive a set salary; he is given power by the Act to appoint assistants to carry out his duties. Defendant, as an appointee thereunder, is an officer of the United States. The OPA was set up as an emergency department of the Executive with far-reaching control, and it is our opinion that it constitutes an executive department of government within the requirements herein mentioned. See Emergency Price Control Act, 50 U.S.C.A.Appendix, §§ 901, 921. The testimony in the record shows that appellant was Supervisory Investigating Officer in the Newark office of the OPA, his duties being prescribed by law. The Act provides that the Administrator, the department head, appoint such persons as he deems necessary to carry out his functions and duties. An appointment by the head of a department is thereby shown. The authority for the appointment of an investigating officer is provided for by the Act and placed in the Administrator. The cases of United States v. Germaine, supra, and Burnap v. United States, 252 U.S. 512, 40 S.Ct. 374, 64 L.Ed. 692, are distinguishable, for in both of them the defendants were clearly employees and not officers. Whether it be found that appellant was an officer or a person acting in an official capacity, there is ample proof for both so that the jury's verdict is supported by the evidence.

Appellant finally argues for a reversal of the judgment because the court refused to give a proffered instruction on the subject of alibi. In the statement of fact we referred to the testimony of two persons to the effect that appellant was elsewhere than on the highway where and when testimony in the case connects him and Mann with the delivery of $600 by the latter to the former.

By the weight of authority it is held that the instructions on the presumption of innocence of the accused, and of the necessity of fastening every necessary element of the crime charged upon the accused beyond a reasonable doubt, are

not enough in cases involving the necessary presence of the accused at a particular time and place, when the accused produces testimony that he was elsewhere at the time. If the accused requests an instruction as to the burden of proof on his alibi, an instruction on the subject must be given so as to acquaint the jury with the law that the government's burden of proof covers the defense of alibi, as well as all other phases of the case. Proof beyond a reasonable doubt as to the alibi never shifts to the accused who offers it, and if the jury's consideration of the alibi testimony leaves in the jury's mind a reasonable doubt as to the presence of the accused, then the government has not proved the guilt of the accused beyond a reasonable doubt. See cases cited at the end of the next succeeding paragraph.

■■■ The appellee claims otherwise, but cites no authorities. He claims, however, that the proffered instruction unduly states details of the case, and for that reason the court was right in refusing to give it. We think it clearly states the situation, but even if it did not, since an instruction on the issue was requested, it was the court's duty to itself compose and give a proper instruction on the subject. Falgout v. United States, 5 Cir., 279 F. 513; Goldsby v. United States, 160 U.S. 70, 16 S.Ct. 216, 40 L.Ed. 343. See United States v. Schanerman, 3 Cir., 150 F.2d 941, at page 946, in which this court said: "It seems settled that, where a correct proposition of law essential to the proper determination of an issue submitted to a jury is incorporated by the defendant into a requested special instruction, which is not given in charge to the jury in substance or in effect or is not covered in the general charge of the court, refusal to give the instruction is reversible error. Hersh v. United States, 9 Cir., 68 F.2d 799, 807; Hendrey v. United States, 6 Cir., 233 F. 5, 18; Calderon v. United States, 5 Cir., 279 F. 556." See Cohen v. United States, 3 Cir., 282 F. 871; Stassi v. United States, 8 Cir., 50 F.2d 526, 528; State v. Parks, 96 N.J.L. 360, 115 A. 305, and State v. Guarino, 105 N. J.L. 549, 147 A. 395.

See Goldsby v. United States, supra, 160 U.S. page 77, 16 S.Ct. page 219, 40 L.Ed. 343, wherein the Supreme Court holds that it is not error to omit to instruct on alibi where it is not asked.[5]

The judgment of conviction is reversed and the cause is remanded for retrial.

---

[5] In United States v. Panchella, D.C. E.D.Pa., 41 F.Supp. 850, 851, it is said: " ' "The defendant had a right, even though no request was made for the instruction, to have the jury fully advised as to the difference between the burden resting upon the commonwealth to establish guilt, and that resting on the defendant with respect to the alibi set-up." Commonwealth v. Andrews, supra, page 604 of 234 Pa., 83 A. 412, 414. "The law of our state requires specific instructions to be given relative to the burden of proof in an alibi, and the degree of persuasion necessary to support a conclusion that the accused was not at the place where the crime was committed." ' I think it was reversible error to fail to instruct the jury as to the degree of persuasion required to prove an alibi."