**William G. SULLIVAN, Petitioner, Appellant,**

**v.**

**Palmer C. SCAFATI, Respondent, Appellee.**

**No. 7563.**

United States Court of Appeals, First Circuit.

Heard June 4, 1970.

Decided June 30, 1970.

---

David Berman, Medford, Mass., with whom John F. Zamparelli, Victor J. Garo, Arthur E. Robbins, and Zamparelli

& White, Medford, Mass., were on brief, for petitioner, appellant.

Lawrence P. Cohen, Asst. Atty. Gen., with whom Robert H. Quinn, Atty. Gen., John J. Irwin, Jr., Asst. Atty. Gen., Chief, Criminal Division, Garrett H. Byrne, Dist. Atty., Suffolk County, Lawrence C. Cameron and Alvan Brody, Asst. Dist. Attys., Suffolk County, were on brief, for respondent, appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

[1] Petitioner appeals from a district court denial of his petition for a writ of habeas corpus alleging various constitutional errors in his state court trial leading to his conviction for murder. He has exhausted his state court remedies, the Massachusetts Supreme Judicial Court having affirmed the conviction, Commonwealth v. Sullivan, 354 Mass. 598, 239 N.E.2d 5 (1968), cert. denied, 393 U.S. 1056, 89 S.Ct. 697, 21 L.Ed.2d 698 (1969).[1]

The crime involved a payroll robbery committed by two armed men in which a person was shot in the head, dying from the wound several months later.

Petitioner did not testify but offered numerous witnesses to prove that he was elsewhere at the time of the robbery. The trial was lengthy and numerous errors have been asserted concerning the indictment, the court's rulings at trial, and its jury instructions. The claim meriting principal discussion is that the court's instruction on the alibi evidence introduced by petitioner was constitutional error.

In accordance with tradition in Massachusetts, see Commonwealth v. French, 1970 Mass. A. S. 619, 663, 259 N.E.2d 195, the trial court quoted from the cautionary part of Chief Justice Shaw's charge given in Commonwealth v. Webster, 5 Cush. (59 Mass.) 295, 319 (1850).[2] It did not, fortunately, give a later portion of the *Webster* charge: "If, therefore, the proof of the alibi does not outweigh the proof that he was at the place when the offense was committed, it is not sufficient." 5 Cush. at 324. The trial court's charge in this case covers 52 pages of transcript; on at least 17 pages there is articulation of the duty of the Commonwealth to prove its case beyond a reasonable doubt, one of these occasions immediately following the quoted instruction on alibi.

> "This defense of alibi is often a defense attempted by contrivance, subornation, and perjury. The proof, therefore, offered to sustain it, is to be subjected to a rigid scrutiny, because, without attempting to control or rebut the evidence of facts sustaining the charge, it attempts to prove affirmatively another fact wholly inconsistent with it; and this defense is equally available, if satisfactorily established, to avoid the force of positive, as of circumstantial evidence. In considering the strength of the evidence necessary to sustain this defense, it is obvious, that all testimony, tending to show that the accused was in another place at the time of the offense, is in direct conflict with that which tends to prove that he or they were at the place where the crime was committed, and actually committed it. In this conflict of evidence, whatever tends to support the one, tends in the same degree to rebut and overthrow the other, and it is for the jury to decide where the truth lies."

---

1. The Commonwealth argues that in several instances petitioner is now making arguments which were not made to the Supreme Judicial Court. They are, however, merely supportive of claims earlier put in issue and do not present new issues which, under Needel v. Scafati, 412 F.2d 761 (1st Cir. 1969), cert. denied, 396 U.S. 861, 90 S.Ct. 133, 24 L.Ed.2d 113 (1969), would bar our present consideration of them. They fall, rather, within the rule of United States ex rel. Kemp v. Pate, 359 F.2d 749 (7th Cir. 1966).

2. The following charge given by the trial judge is identical in all material aspects to the charge set forth in the *Webster* opinion:

   "Of this character is the defense usually called an alibi; that is, that the accused was elsewhere at the time the offense is alleged to have been committed. If this is true—it being impossible that the accused should be in two places at the same time—it is a fact inconsistent with that sought to be proved, and excludes its possibility.

Petitioner contends that pejoratively labelling the alibi defense as "often * * * attempted by contrivance, subornation, and perjury" is impermissibly to lighten the burden of the prosecution. Furthermore, to admonish that "rigid scrutiny" be given the alibi testimony because "it attempts to prove affirmatively another fact wholly inconsistent" with the charge is—petitioner insists—to declare alibi an affirmative defense with the burden resting on the defendant. As support for these objections, petitioner cites two recent habeas corpus cases arising out of state convictions in Iowa, Johnson v. Bennett, 386 F.2d 677 (8th Cir. 1967), vacated and remanded, 393 U.S. 253, 89 S.Ct. 436, 21 L.Ed.2d 415 (1968), on remand, 414 F.2d 50 (8th Cir. 1969), and Stump v. Bennett, 398 F.2d 111 (8th Cir. 1968) (en banc), cert. denied, 393 U.S. 1001, 89 S.Ct. 483, 21 L.Ed.2d 466 (1968).

The alibi charge in each of these cases was to the effect that the defendant had the burden of proving his alibi defense by a preponderance, or by the greater weight, of the evidence. *Johnson I* upheld the charge but on remand, after *Stump* declared it unconstitutional, *Johnson II* also held it unconstitutional. Petitioner asserts that these cases, bearing the implied imprimatur of Supreme Court approval in 393 U.S. at 255, 89 S.Ct. 436, are controlling, observing that "the Iowa charge was explicitly based on *Webster*", citing State v. Hardin and Henry, 46 Iowa 623, 629 (1877).

That observation overlooks a critical distinction. As we have noted, the charge in our case contained the cautionary portion of *Webster*, 5 Cush. at 319, *but omitted* the burden-shifting portion at 324. The aspect of the Iowa charge which was struck down stemmed from and expanded upon the burden-shifting notion of *Webster*. To suggest that *Johnson* or *Stump* at either Circuit Court or Supreme Court level proscribe, as constitutional error, the cautionary language used in petitioner's trial misinterprets the holding in those decisions.

Indeed, the opposite conclusion seems more likely: *only* the burden-shifting language, and not the cautionary language of "rigid scrutiny," was deemed to pose a constitutional problem. The charge in *Johnson* included an instruction that the jury "scan the proof of alibi with care and caution" and that such evidence supporting the alibi should "be scrutinized with care and carefully considered." 414 F.2d at 51, n. 3. In its *per curiam* opinion remanding *Johnson* for consideration in the light of *Stump*, the Supreme Court quoted only the burden-shifting passage from the instruction, 393 U.S. at 254, n. 1, 89 S.Ct. 436. On remand, Judge Blackmun, in the course of a detailed survey of the prolific Iowa case law on alibi instructions, noted that "The issue [of the allocation or burden of proof] was often * * * confused by the precautionary of disparagement instruction customarily given in Iowa to alibi evidence." 414 F.2d at 55. We draw from these readings the conclusion that a cautionary call to scrutinize alibi evidence carefully without a shifting of the burden of proof is not unconstitutional. *See, e.g.*, United States v. Sullivan, 329 F.2d 755, 757 (2d Cir. 1964) (approving cautionary instruction that defendant as witness is "vitally interested" in outcome of case), cert. denied, 377 U.S. 1005, 84 S.Ct. 1943, 12 L.Ed.2d 1054 (1964); Taylor v. United States, 390 F.2d 278, 284 (8th Cir. 1968) (same, "very grave interest").

In the present case the "rigid scrutiny" language was supplemented by a reference to the frequency with which alibi evidence was attended by "contrivance, subornation and perjury." These words, while gilding the lily, merely make explicit the reason underlying the court's instruction to scrutinize an alibi carefully. While we would prefer not to have such words used, we see no real possibility that this language in this context actually misled the jury as to its duty or the state's heavy burden of proof. *Cf.* Bihn v. United States, 328 U.S. 633, 636–637, 66 S.Ct. 1172, 90 L. Ed. 1485 (1946).

■ Finally, we are not persuaded by petitioner's contention that the language in the charge to the effect that an alibi "attempts to prove affirmatively" facts inconsistent with the prosecution's case is a cloaked way of shifting the burden of proof to the petitioner. The language simply describes a logical truism which the fuller context explains: the prosecution's case may be attacked by directly rebutting the facts alleged or by showing affirmatively the occurrence of another set of facts inconsistent with the facts alleged, which latter course is commonly called alibi. To equate the court's language with an instruction that the defendant has an affirmative burden of proof concerning alibi is simply to play on words. Where the refrain regarding the prosecution's heavy burden for all elements of the crime infused the charge so pervasively, we reject the possibility that the incidental use of "affirmatively" in the above-described manner actually confused the jury as to the proper placement of the burden of proof.

■ Another of petitioner's objections is that the prosecution, contrary to pretrial stipulation and assurances, introduced evidence of an admission by petitioner, in the form of testimony by two police officers as to what each had seen and overheard. The stipulation in question, made by the prosecution in response to a motion to sever the trial of the two defendants, stated that the prosecution would not introduce confessions or admissions of either defendant. In summing up its understanding of the undertaking, the court asked, "Of either of the defendants, neither confessions nor admissions on the part of one defendant vis a vis the other?", to which the prosecutor replied, "That's right." The Supreme Judicial Court held that this stipulation related only to statements of one defendant that would implicate the other. Both the context of the motion for severance and the trial court's explicit wording of its understanding support this construction.

In addition to the stipulation, the prosecutor, in response to petitioner's motion for "copies of all statements alleged as admissions and/or confessions," said that he had no statement of petitioner. The Supreme Judicial Court held that the response was to be read in connection with the motion and "So read, it concerned statements of which copies could be made." 354 Mass. at 610, 239 N.E.2d at 12. We agree. While the testimony of the two officers—one having observed the petitioner trying to avoid scrutiny by the robbery eyewitness, and the other having overheard petitioner's remarks at that time—amounted to an admission, it was not the kind of written statement resulting from police interrogation which petitioner's motion arguably contemplated. The district court after an evidentiary hearing found that this was in fact the understanding of the prosecutor, that he had meant that he had no written statements of which a copy could be furnished.

We of course expect prosecutors to comply with the full spirit as well as the words of pre-trial stipulation and discovery. However, in this case, we accept the district court's finding that the confusion arose inadvertently and through no deliberate design by the prosecution. More importantly, we discern no prejudice to the petitioner from the belated disclosure of the evidence in question. We note, finally, that petitioner requested no continuance when the evidence was offered; that the trial continued for several days after the incriminating evidence was admitted; that petitioner introduced evidence in contradiction of the incident; and that two and one half years later, he proffers no suggestion that the person to whom he addressed the remark at issue (who would surely be known to petitioner) would testify that it was not made. *Cf.* United States v. Trainor, 423 F.2d 263 (1st Cir. 1970).

■ The remaining issues can be disposed of more summarily, because assiduous counsel seeks to stretch limited holdings into principles of vast expanse and because the issues have been faithfully dealt with both by the Supreme Judicial Court of Massachusetts and the

district court. A third exegesis has no justification. Petitioner challenges the standard Massachusetts indictment for first degree murder [3] for its failure to specify whether the grand jury had in mind murder accompanied by extreme cruelty, premeditation, or the participation in a felony. His argument is *not* that he lacked sufficient notice of the crime charged but that the grand jury may have indicted for a ground other than the ground on which the petit jury convicted. Yet the conceptually different grounds are simply ways of saying the same thing, that petitioner acted with malice when he killed his victim. The grand jury indicted for murder with malice aforethought and the petit jury convicted for the same reason. The grand jury's failure to specify the precise reason for its belief that petitioner possessed the requisite state of mind is not error.[4]

■ Petitioner also contends that it is constitutional error for the court to charge the jury that it may draw no inference from the defendant's failure to testify, even though he made no objection before the perfectly correct instruction was given. This contention was fully answered in United States v. Garguilo, 310 F.2d 249, 252 (2d Cir. 1962), and requires no further elaboration.

■ Finally, petitioner seeks to elevate two rulings of the trial court foreclosing further cross-examination to constitutional error. A police officer who had not been shown to have testified before the grand jury was not allowed to answer whether his trial testimony had been given to such jury, and the decedent's daughter was not allowed to be queried from a hospital report which petitioner could have independently submit-

ted into evidence. In neither instance do we feel that the trial court abused its discretion, much less that these rulings amounted to an unconstitutional denial of the right of cross-examination.

The other assigned errors do not merit discussion here.

Affirmed.

3. That indictment, so far as relevant here, charged:

"WILLIAM G. SULLIVAN and GEORGE A. REISSFELDER, on the fourteenth day of October, in the year of our Lord one thousand nine hundred and sixty-six, did assault and beat one Michael S. Shaw, with intent to murder him, and by such assault and beating did kill and murder the said Michael S. Shaw."

4. Russell v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962), involves the fairly specialized problem of indictments for failing to respond to Congressional committee investigations, where specification of the committee's inquiry is a critical prerequisite.