William E. WRIGHT, Petitioner,

v.

Harold J. SMITH, Superintendent, Attica Correctional Facility, Respondent.

No. Civ–74–464.

United States District Court, W. D. New York.

June 15, 1977.

Robert I. Gannon, Buffalo, N. Y., for petitioner.

Louis J. Lefkowitz, Atty. Gen., State of New York (James L. Kennedy, Buffalo, N. Y., of counsel), for respondent.

CURTIN, Chief Judge.

Petitioner William E. Wright was convicted of robbery in the first degree and robbery in the second degree (violations of New York Penal Law §§ 160.15 and 160.10, respectively) on August 3, 1972, following a jury trial in Erie County Court. In his application to this court for a writ of habeas corpus, petitioner has presented four grounds which he claims require reversal of his conviction:

(1) the pre-trial identification procedures were unnecessarily and impermissibly suggestive;

(2) the double jeopardy ban of the fifth amendment of the Constitution was violated when the court allowed the jury to find petitioner guilty of both robbery in the first degree and robbery in the second degree;

(3) the trial judge's comment to the jury following the testimony of an alibi witness, petitioner's sister, that she would not lie to help her brother, violated due process; and

(4) the trial judge's charge to the jury on the matter of petitioner's alibi defense shifted the burden of proof to petitioner and thereby resulted in a denial of due process of law.

At petitioner's trial, Mrs. Ruth Kowles, an employee of the Erie County Department of Social Services, testified that on November 11, 1971, at approximately 4:45 p. m., her purse was forcibly taken from her by two black men in the vicinity of the Commodore Perry Housing Project in Buffalo, New York. The entire episode lasted less than one minute. In court, Mrs. Kowles identified petitioner as one of her assailants and she further testified that petitioner had threatened her with a knife during the incident.

Upon conviction, petitioner, an admitted narcotics addict, was sentenced to an indeterminate period of incarceration of up to 25 years on the first degree robbery charge and an indeterminate prison term not to exceed 15 years on the second degree robbery charge, the terms to run concurrently. The Appellate Division, Fourth Department, reversed the conviction only with respect to the sentence imposed and remanded the case to the Erie County Court for resentencing. 42 A.D.2d 680, 346 N.Y.S.2d 787 (4th Dept. 1973). Petitioner was resentenced in September 1973 to an indeterminate sentence of 0–15 years for the first degree robbery count and 0–7 years for the second degree robbery count, the terms again to run concurrently. The New York State Court of Appeals then denied leave to appeal (November 5, 1973). Petitioner has thus exhausted his state court remedies for those claims which he has presented to this court.

Petitioner first contests the validity of the identification procedures that were used by law enforcement officials prior to the in-court identification of petitioner made by the victim of the robbery. Shortly after the robbery, Mrs. Kowles described her assailant as being a Negro male in his early 20's, approximately 5′8″ tall, of medium build and medium skin color, with a close-cut bush hairstyle. On the day following the crime, Mrs. Kowles viewed over 100 mug shots at police headquarters and was unable to identify her assailant as being among those mug shots.

At the *Wade* hearing held on July 31 and August 1, 1972, Detective Donald Peacock of the Buffalo Police Department testified that he had learned from other officers that petitioner William Wright had been "active" at the time of the robbery in the seventh precinct where the Perry Project is located. Detective Peacock then added petitioner's picture to some 30 other pictures from his "personal collection" and had Mrs. Kowles view a number of these pictures in her home. At the *Wade* hearing, Mrs. Kowles testified that she viewed approximately 5 pictures and was able to identify the petitioner from among this group of pictures. Detective Peacock testified that he had shown Mrs. Kowles approximately 12 photos. The court accepted the detective's testimony in its findings.

There is nothing further in the transcript of the *Wade* hearing that would indicate any improper suggestions in police conduct at the time that Mrs. Kowles viewed these photographs. I find that these photo identification procedures used by the police were not so unnecessarily suggestive and so conducive to irreparable mistaken identification that the defendant was denied due process of law. It was therefore proper to admit this identification evidence at petitioner's trial. *See Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

On December 6, 1971, approximately three weeks after she had identified petitioner from among police mug shots, Mrs. Kowles was asked to view a lineup at police headquarters, in further efforts to identify her assailant. The same 5 black males participated in each of two lineups viewed by Mrs. Kowles on that date. The testimony at the *Wade* hearing indicated that three of the participants in the lineup were taller than the petitioner. The height difference between these three individuals and petitioner was further accentuated by the fact that each of these three taller individuals had Afros or bush hair styles. The other lineup participant was approximately the same height as petitioner, 5′8″ tall, and wore a close-cut hair style, similar to petitioner's. Petitioner was represented by an

attorney who was present at the lineup and who expressed his objection to the fact that only one individual other than petitioner had short-cropped hair and that this individual was the only one of the group who was within 3 inches of petitioner's height. The transcript of the *Wade* hearing contains no other testimony that would indicate suggestiveness in police conduct during the course of the lineup.

■ Petitioner contends that these differences in physical appearance, hair style and height, as identified at the *Wade* hearing, are clearly indicative of an impermissibly suggestive procedure followed by police at the lineups. It is true that certain discrepancies existed between the height and hair style of the defendant and those of three other participants in the lineup. One other lineup participant was approximately the same height as petitioner and wore his hair in a similar fashion. As Judge Friendly of this circuit has recognized, there is no requirement that a defendant in a lineup must be surrounded by people nearly identical in appearance, however desirable that may be. *United States v. Reid,* 517 F.2d 953, 966, n. 15 (2d Cir. 1975). The Second Circuit Court of Appeals has found that the fact that a defendant, a short man, was placed in a lineup with mostly taller men, "while certainly not the most desirable procedure, does not by itself warrant a finding of unnecessary suggestiveness." *United States ex rel. Pella v. Reid,* 527 F.2d 380, 384 (2d Cir. 1975). *See also United States v. Jackson,* 166 U.S.App.D.C. 166, 509 F.2d 499 (1974) (of 11 men in lineup, defendant was the only participant with a "bush" or Afro hair style). *Cf. United States ex rel. Cannon v. Smith,* 527 F.2d 702 (2d Cir. 1975).

■ While the two lineups may not have been conducted under optimum conditions, given the totality of the circumstances I do not think that the likelihood of misidentification was so great as to constitute a violation of due process. *See Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). Mrs. Kowles had only 30 to 60 seconds in which to view the assailant during the robbery but, as she testified at the *Wade* hearing, she looked at her assailant very closely so that she would be able to identify him later. The description of her assailant which the victim gave to the police shortly after the crime fit the description of the petitioner. The time that elapsed between the crime and the photo identification was approximately one week and the lineups were held approximately three weeks later. At the lineup, each participant was required to repeat the words, "Shut up, give me the purse, give me the purse." The victim then identified the petitioner, both by his voice and by his appearance, as the individual who had taken her purse. At the time of the photo identification and at the time of the two lineups, Mrs. Kowles was positive of her identification of the petitioner.

The evil to be avoided in the course of a lineup identification procedure is "a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). I find that neither a due process violation nor a miscarriage of justice occurred as a result of the procedures that were relied on at the lineup. Mrs. Kowles' lineup identification testimony was therefore admissible at trial. *See United States ex rel. Pella v. Reid, supra; Caver v. State of Alabama,* 537 F.2d 1333, 1334–5 (5th Cir. 1976); *Stovall v. Denno, supra.*

Petitioner next alleges that he was subjected to double jeopardy, in violation of his rights under the fifth and fourteenth amendments to the Constitution, when the court allowed the jury to consider and to find him guilty of both robbery in the first degree and robbery in the second degree. In this instance petitioner was convicted on two counts which arose out of the same act or transaction. First, petitioner was convicted on the charge of robbery in the first degree because the jury found that he forcibly stole property from another and that he used the threat of the immediate use of a dangerous instrument, a knife, to accomplish this taking. Second, petitioner was

convicted of the count of robbery in the second degree because the jury found that he forcibly stole property from another and that he was aided by another person who was actually present during the course of the crime. As indicated above, petitioner was sentenced to a prison term of 0–15 years on the first count, and a prison term of 0–7 years on the second count, the sentences to run *concurrently.*

■ The double jeopardy clause "protects against multiple punishments for the same offense." *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). The New York Penal Law specifically mandates that sentences imposed after conviction for several crimes arising out of the same act must be served concurrently. New York Penal Law § 70.25 (McKinney's 1975). I find that the trial court complied with the statutory requirements of the Penal Law when it imposed concurrent sentences for these convictions on two crimes which arose out of the same incident. The court did not impose multiple punishments on the convictions. It is therefore clear that there has been no violation of the prohibition against double jeopardy.

■ Petitioner's third claim is that he was deprived of a fair trial by the trial judge's comment with respect to the credibility of witnesses following the testimony of one of the alibi witnesses. In the course of examining petitioner's sister, one of the alibi witnesses, defense counsel asked: "Miss Wright, would you lie to help your brother?", to which the witness responded: "No." (Trial Transcript at 196). Over the prosecution's objection, the trial judge allowed this answer to stand. The judge then commented: "[I]t is up to the jury to determine [whether] any witness is lying, not just this witness, but any witness; the believability, the credibility of each witness is up to the jury." (Trial Transcript at 196). I do not find that this judicial remark in any way deprecated defense counsel or the case that he was presenting. *Cf. United States v. Dellinger,* 472 F.2d 340, 386 (7th Cir. 1972), *cert. denied,* 410 U.S. 970, 93 S.Ct. 1443, 35 L.Ed.2d 706 (1973). The

judge's comment was merely a cautionary instruction to the jury and in no way expressed his own opinion about the evidence which the alibi witness had just presented. I find that this comment did not in any way deprive the petitioner of a fair trial. *See Quercia v. United States,* 289 U.S. 466, 470, 53 S.Ct. 698, 77 L.Ed. 1321 (1933).

Petitioner's final argument is that the trial court's charge on the matter of the alibi which petitioner offered at trial shifted the burden of proof to the petitioner and thus resulted in a denial of due process of law.

At his trial, petitioner presented two alibi witnesses, his sister and his wife, who testified that petitioner was in his own apartment at 344 Perry Street, Apartment 5–D in the Perry Project, with them, at the time that the robbery took place. These witnesses testified that petitioner did not leave their sight between 4:00 p. m. and 11:00 p. m. on November 11, 1971, except for a brief period of a few minutes when the petitioner used a bathroom in the apartment. These witnesses further testified that, because of a cut that he had received on his right ankle several days prior to November 11, 1971, the petitioner was able to move from place to place only with great difficulty. These two alibi witnesses provided the essential basis for petitioner's defense that he was not present at the scene of the robbery of Mrs. Kowles. At the close of testimony petitioner requested that the court give specific instructions to the jury with respect to the alibi defense.

■ In this circuit, jury instructions in a state trial are normally a matter of state law and are not reviewable in a federal habeas corpus application unless there has been a showing that the alleged errors in the instruction were so serious as to deprive the petitioner of a federal constitutional right. *United States ex rel. Smith v. Montanye,* 505 F.2d 1355, 1359 (2d Cir. 1974), *cert. denied,* 423 U.S. 856, 96 S.Ct. 106, 46 L.Ed.2d 81 (1975). *See also Cupp v. Naughten,* 414 U.S. 141, 146, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). Federal habeas corpus is available to set aside a conviction

only when the impropriety in the challenged jury instruction constitutes a "clear denial of due process so as to render the trial fundamentally unfair." *Higgins v. Wainwright*, 424 F.2d 177, 178 (5th Cir.), *cert. denied*, 400 U.S. 905, 91 S.Ct. 145, 27 L.Ed.2d 142 (1970), *rehearing denied*, 400 U.S. 1002, 91 S.Ct. 463, 27 L.Ed.2d 455 (1971), as referred to with approval in *Lee v. Henderson*, 342 F.Supp. 561, 563 (W.D.N.Y.1972). *See also United States ex rel. Smith v. Reincke*, 239 F.Supp. 887, 894 (D.Conn.), *aff'd*, 354 F.2d 418 (2d Cir. 1965), *cert. denied*, 384 U.S. 993, 86 S.Ct. 1896, 16 L.Ed.2d 1010 (1966); *United States ex rel. Winfield v. Casscles*, 403 F.Supp. 956 (E.D.N.Y.1975); *United States ex rel. Bryant v. Vincent*, 373 F.Supp. 1180 (S.D.N.Y.1974).

■ In a criminal trial the state must always bear the burden of proof, or burden of persuasion, on all elements of the alleged offense. Any shift of the burden of persuasion to the defendant would violate the due process clause of the fourteenth amendment and would render the trial fundamentally unfair. *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *Johnson v. Wright*, 509 F.2d 828, 831 (5th Cir.), *cert. denied*, 423 U.S. 1014, 96 S.Ct. 445, 46 L.Ed.2d 384 (1975). In a case which also explored the validity of an alibi instruction, the Fifth Circuit Court of Appeals has recognized the importance of this rule:

> . . . [A] shift in the burden of proof of an essential element of the crime does rise to constitutional proportions and renders the trial fundamentally unfair. The presumption of innocence and the harsh burden of proof placed on the State in criminal prosecutions are . . . far too important and fundamental to be classified as less than constitutionally protected.
>
> *Smith v. Smith*, 454 F.2d 572, 579 (5th Cir. 1971), *cert. denied*, 409 U.S. 885, 93 S.Ct. 99, 34 L.Ed.2d 141 (1972).

*See also Stump v. Bennett*, 398 F.2d 111, 116 et seq. (8th Cir.), *cert. denied*, 393 U.S. 1001, 89 S.Ct. 483, 21 L.Ed.2d 466 (1968).

■ When a defendant raises an alibi defense, he is entitled to jury instructions that specify that the Government must bear the burden of persuasion on this element of the offense as well. *See United States v. Marcus*, 166 F.2d 497, 503–04 (3d Cir. 1948). The jury must be informed that, once a defendant has offered proof that he was not present at the time and place that the crime was committed, then the Government must convince the jury beyond a reasonable doubt that the defendant's alibi is not true [*United States v. Booz*, 451 F.2d 719, 723 (3d Cir. 1971), *cert. denied*, 414 U.S. 820, 94 S.Ct. 45, 38 L.Ed.2d 52 (1973)], and that the defendant was in fact present at the scene when the crime was committed. If such specific instructions are not given when a defendant offers alibi evidence at trial, there is a likelihood that the jury will become confused about the burden of persuasion:

> When affirmative proof, best known by the defendant himself, is offered, a likelihood exists that jurors would look to that proof for persuasion of its truth.
>
> *United States v. Booz, supra*, at 723.

■ In all criminal trials it is the judge's duty to tell the jury that the defendant does not have to offer any proof in his own behalf. When a defendant does offer affirmative proof of his innocence, such as an alibi, it is important for the judge to advise the jury how it should handle this evidence. There is a natural tendency among ordinary individuals who are serving as jurors to feel that when a defendant comes forward with affirmative evidence of his innocence,[1] then that defendant has the responsibility of convincing the jurors that his evidence is true, accurate and believable. Unless the court fully explains to the jury that the defendant does not have any burden of proving his innocence but that this burden remains on the

---

1. The phrase "affirmative proof of innocence" is to be distinguished from the statutorily defined "affirmative defense." Under the New York State Penal Law defendant has the burden of establishing an "affirmative defense" by a "preponderance of the evidence." NYPL § 25.00(2). It is clear that under the New York Penal Law, alibi is *not* an affirmative defense.

Government to prove beyond any reasonable doubt each and every element of the crime charged, the jury may be left with the misimpression that the defendant is under an obligation to prove that he was some place other than the place where the crime occurred.

■ In the case before me, if the jury instruction can be read as shifting the burden of persuasion on the alibi issue from the Government to the petitioner, then a due process violation will have been made out. *See United States v. Vigorito*, 67 F.2d 329, 330 (2d Cir. 1933), *cert. denied*, 290 U.S. 705, 54 S.Ct. 373, 78 L.Ed. 606 (1934); *United States v. Marcus, supra; Smith v. Smith, supra*, at 578.

■ The test is whether the jury, hearing the alibi instruction in the context of the entire charge, would gather from its language the correct rules which should be applied in arriving at a verdict. *See People v. Russell*, 266 N.Y. 147, 153, 194 N.E. 65 (1934); *United States v. Birnbaum*, 373 F.2d 250, 257, *rehearing denied*, 375 F.2d 232 (2d Cir.), *cert. denied*, 389 U.S. 837, 88 S.Ct. 53, 19 L.Ed.2d 99 (1967); *United States v. Andreadis*, 366 F.2d 423, 434 (2d

Cir. 1966), *cert. denied*, 385 U.S. 1001, 87 S.Ct. 703, 17 L.Ed.2d 541 (1967). If I conclude that the instruction conveys the impression that alibi is a defense that the defendant must establish to the jury's satisfaction, and that there is insufficient remedial language to render this error harmless, then the writ must issue.

My review of the trial court's full instruction indicates that, in most respects, it was a fair and accurate summary of the standards which the jury must apply to the evidence during the course of its deliberations. At the outset, the trial judge instructed the jury that the defendant is presumed to be innocent and that the Government must bear the burden of persuasion on each and every element of the crimes charged in the indictment against the petitioner. The trial judge further advised the jury that it might return a verdict of guilty only after it had been convinced beyond a reasonable doubt that the defendant did in fact commit the crimes charged.[2]

However, careful scrutiny of that portion of the instruction concerning the alibi defense[3] has led me to conclude that this

**2.** The most comprehensive example of this instruction appears at page 270 of the trial transcript:

. . . [T]he People having accused this defendant of the crime charged, have the burden of proving his guilt beyond a reasonable doubt. This defendant is under no obligation to disprove his guilt, or to prove his innocence. The presumption of innocence is with him. The burden of proving his guilt, rests with the People throughout the trial, and it extends to every element of the crimes charged in the indictment, and it never shifts to the defendant.

The gist of this instruction was repeated at three other points in the course of the judge's charge to the jury. (Trial Transcript at 269, 271 and 279). On three other occasions in the course of delivering the charge to the jury, the court referred to the fact that the jury must be convinced beyond a reasonable doubt that the defendant had committed all elements of the crime. *See* Trial Transcript at 296, 298 and 303.

**3.** The charge in reference to defendant's reliance on alibi as a defense is reproduced in its entirety:

Now, the defendant in this case, in addition to pleading not guilty, has interposed a de-

fense that is commonly known as an alibi. An alibi is a latin [sic] word meaning elsewhere, and when applied to a trial, or in this trial of a case, a trial such as this, it means that at the time of the alleged crime, said to be committed by the defendant, that the defendant claims that he was someplace other than the scene of the crime. In this case, through two alibi witnesses, he maintains that he was in an apartment, not far from the scene, if I recall correctly. She said, Ruth Kowles said she came out of 312 Perry Street, and that just outside, some thirty, or forty, or fifty feet from where she exited from 312 Perry Street, that she was robbed. Now, the defendant says, through the two alibi witnesses, that he was in fact not out of the house; that he lives at 344 Perry Street, a short distance from the scene, here, but that his physical condition was such that he couldn't run, and that he was in fact not out of the house. It's claimed by one of the alibi witnesses, that he was reading a—reading to his wife from 4:30 to 5:00, and by the other alibi witness, I believe that he was reading from 4:30 to 5:30, and that he didn't, during this time, leave the house, and in fact, didn't leave the house at all between quarter after

**346**

aspect of the charge is marked by subtle but important deficiencies.

The first infirmity in this instruction lies in the fact that at no point in the instruction did the trial court specifically state that the Government must bear the burden of persuasion *with respect to the alibi issue.* The court failed to state unequivocally that this burden required the Government to convince the jury beyond a reasonable doubt that the alibi offered by petitioner was not true.[4] *See United States v. Mar-*

cus, *supra,* at 504; *United States v. Booz, supra,* at 723.

My second concern is that the trial judge may very well have created confusion in the minds of the jurors, albeit inadvertently, by his use of the following language:

Now, an alibi defense, if clearly—clearly established by unsuspected, believable testimony, is the very best that an innocent man can make.

(Trial Transcript at 288).[5]

four and a quarter to eleven. Now, an alibi defense, if clearly—clearly established by unsuspected, believable testimony, is the very best that an innocent man can make. No man can be in more than one place at one time. And, if therefore, the defendant was not at the scene of the alleged crime at the time when it is said to have been committed, he cannot be guilty of the commission of any of the crimes in this indictment. Now, you ascertain whether this alibi defense was interposed in good faith. This is your job here, or, whether it was a defense that was concocted and resorted to, in an attempt to clear a guilty man of the charge. You should examine not only the principal facts which the alibi witnesses testified to, but carefully examine all of the differences, discrepancies, or contradictions, if there be any in the testimony of these alibi witnesses. You may consider the distances involved from the scene of the events, or, were these witnesses accurate, were they evasive; is there any common or mutual interest among the alibi witnesses, which interest might affect them to the extent of creating or helping to create a false alibi, or is their testimony prompted solely by a desire to assist in the true administration of justice. If, after careful analyzing on behalf of the defendant, the evidence which has been presented here, you find it is false or has been interposed here intentionally as false defense, such a finding of fact, may be considered by you as a circumstance bearing on the guilt or the innocence of the defendant. The jurors have a right, if they find as a fact, that a false defense has been intentionally interposed, to ask, what was the motive underlying the interposition of the false defense, was it, or was it not to escape the force of convincing circumstances, pointing to guilt. If you find that any such attempt has been made, you may consider that fact in determining the guilt or the innocence of this defendant. But, if on the other hand, you find that this was, that he was truly in that apartment, that he wasn't out on the street, that he, of course, if you find that he was in that apartment, and never left that apartment that apartment [sic] that afternoon,

around 4:45, then you must find him not guilty.

Now, this is a sharp issue of fact. It's left for your determination. . . .

\* \* \* \* \* \*

Counsel has made a request here that I tell you, if you have a—if the alibi witnesses have created reasonable doubt in your mind as to whether or not the defendant committed the crimes charged here, you have a duty to acquit. Of course, that is true; if you have a doubt, if you have a doubt as to the guilt of the defendant, you are bound to resolve the doubt in favor of the defendant. I am sure that I told you that.
(Trial Transcript at 287–291, 302–303).

4. The New York statutory language is clear:
When a "defense," other than an "affirmative defense," defined by statute is raised at a trial, the people have the burden of disproving such defense beyond a reasonable doubt. New York Penal Law § 25.00(1).
As previously recognized, the defense of alibi is not considered to be an "affirmative defense" under the New York Penal Law. *See supra,* n. 1. The New York State Court of Appeals has long recognized that:
. . . "In the trial of a criminal case it can never be necessary to add anything to the plain and simple language of the statute", that any statement of a Trial Judge which tends to deprive a defendant of the full protection of the statute is reversible error and that the force of the constitutional protection is not to be weakened by qualifying words. *People v. McLucas,* 15 N.Y.2d 167, 171, 256 N.Y.S.2d 799, 801, 204 N.E.2d 846, 848 (1965).
*See also People v. Fitzgerald,* 156 N.Y. 253, 266, 50 N.E. 846 (1898); *People v. Forte,* 277 N.Y. 440, 443, 14 N.E.2d 783 (1938); *People v. Manning,* 278 N.Y. 40, 44, 15 N.E.2d 181 (1938).

5. Decisions of the New York Supreme Court, Appellate Division, Second Department have specifically recognized that such language is improper and have mandated new trials when such language was used in a jury instruction. *See People v. Chestnut,* 42 A.D.2d 594, 345

I believe that this language, even in the context of the full charge, is confusing at best. Conceivably, it could be read by the jurors as being merely a general observation by the court that, in theory, an alibi that is supported by unsuspected, believable testimony is the best kind of defense that *any* innocent person can offer. However, I find it hard to believe that the jury would not rely on this standard in the course of evaluating the evidence of the case before it. This language may very well have left the impression in the jurors' minds that anything less than "clearly established, unsuspected, believable evidence" would not suffice to support the alibi defense. Such language conveys the impression that the defendant was under some obligation to establish his alibi when the emphasis should properly have been on informing the jury of the requirement that the Government must disprove this alibi defense beyond a reasonable doubt.

▇▇ The trial judge exhorted the jury to scrutinize the alibi testimony very carefully. He directed the jury to analyze discrepancies and contradictions that were shown to exist in the testimony of the alibi witnesses when compared with other testimony that had been presented. He instructed the jurors to consider whether there was any common or mutual interest that existed among the defendant and the alibi witnesses which might provide a motive or incentive for offering false alibi testimony. Such language in itself does not constitute error. *Sullivan v. Scafati,* 428 F.2d 1023, 1025 (1st Cir. 1970), *cert. denied,* 400 U.S. 1001, 91 S.Ct. 478, 27 L.Ed.2d 452 (1971). *See also United States v. Sullivan,* 329 F.2d 755, 757 (2d Cir.), *cert. denied,* 377 U.S. 1005, 84 S.Ct. 1943, 12 L.Ed.2d 1054 (1964); *Taylor v. United States,* 390 F.2d 278, 284 (8th Cir.), *cert. denied,* 393 U.S. 869, 89 S.Ct. 155, 21 L.Ed.2d 137 (1968).

N.Y.S.2d 79 (2d Dept. 1973); *People v. Johnson,* 37 A.D.2d 733, 323 N.Y.S.2d 880 (2d Dept. 1971); *People v. Anderson,* 37 A.D.2d 728, 323 N.Y.S.2d 882 (2d Dept. 1971). In *People v. Johnson, supra,* the Second Department recognized that a defendant

> has no burden of producing "unsuspected believable testimony" of an alibi; it is

Had this language been balanced by a juxtaposed instruction which specified the nature of the Government's burden of persuasion, this language would present no problem. However, the following language appears immediately after the court's cautionary instruction:

> But, if on the other hand, you find that this was, that he was truly in that apartment, that he wasn't out on the street, that he, of course, if you find that he was in that apartment, and never left that apartment that apartment [sic] that afternoon, around 4:45, then you must find him not guilty.
>
> (Trial Transcript at 291).

This language fails to provide the proper balance to assure that the burden of persuasion remained with the Government and was not shifted to the defendant. Rather, this kind of language could be interpreted by the jurors as meaning that the defendant had an affirmative duty to demonstrate that he had been in his apartment at the time the alleged crime was committed.

Finally, I question the propriety of the language used by the trial judge in the supplemental alibi instruction where he stated:

> [I]f the alibi witnesses have created reasonable doubt in your mind as to whether or not the defendant committed the crimes charged here, you have a duty to acquit.
>
> (Trial Transcript at 303).

This language is followed immediately by language that is remedial in nature:

> Of course, that is true; if you have a doubt, if you have a doubt as to the guilt of the defendant, you are bound to resolve the doubt in favor of the defendant. I am sure that I told you that.
>
> (Trial Transcript at 303).

> enough for him to produce testimony of the same character as all other testimony—that is, testimony that the jury may accept, after considering it in the face of all the circumstances.
> 323 N.Y.S.2d at 881.

I read this language to imply that the defendant who has relied on an alibi defense must take an active role to create reasonable doubt in the jurors' minds with respect to his responsibility for the alleged criminal acts. This instruction would encourage jurors to look first to a defendant's affirmative proof of innocence. A better approach was articulated in *United States v. Booz, supra,* where the Third Circuit indicated that such proof of alibi "need only raise a reasonable doubt in the jurors' minds as to *whether the defendant was present at the scene*." 451 F.2d at 724 (emphasis added).[6] This language is to be distinguished from that used in the case before me where the trial court had indicated that acquittal would be appropriate if the alibi witnesses had created a reasonable doubt as to *whether or not the defendant had committed the crimes charged.* The difference is a subtle one but I find that the language used by the trial judge here further detracts from the Government's burden of persuasion.

█ It is my conclusion that the alibi instruction, read in its entirety, was so ambiguous as to allow reasonable people to infer that the petitioner was required to prove that he was not present at the scene of the crime. The constitutional infirmities which I have identified were not cured by the more general language which appears in the course of the charge (*see supra*, n. 2), that the burden of proof never shifts from the Government to the defendant and that the Government must bear the burden of persuasion on all issues raised at trial. *United States v. Booz, supra,* at 723–24. *Cf., United States v. Vigorito, supra; Sullivan v. Scafati, supra.*

This instruction gave the jury a choice between applying two conflicting burdens of persuasion. Reasonable minds could infer from this instruction that the defendant still had the burden of showing his nonpresence, even though the instruction does

state at several points that the burden remains with the state to prove "the crime as a whole." (*See Stump v. Bennett, supra,* at 122). However, it is clear that the jury does not have this option. The jury may not "ignore the reasonable doubt test on the issue of presence in a criminal prosecution. The Constitution, and more specifically the due process clause of the fourteenth amendment, permits of no such 'choice.' " *Smith v. Smith, supra,* at 578.

█ The constitutional deficiencies in this charge cannot be classified as harmless error under the standards established by the United States Supreme Court in *Chapman v. State of California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and *Anderson v. Nelson,* 390 U.S. 523, 88 S.Ct. 1133, 20 L.Ed.2d 81 (1968). It is fundamental to our system of justice that instructions to the jury must be consistent with each other and not misleading to the jurors. *Smith v. United States,* 230 F.2d 935 (6th Cir. 1956). I believe that the instruction in the case before me was likely to have caused confusion and to have created a substantial likelihood that the jury would incorrectly place the burden of persuasion on the petitioner with respect to at least one essential element of the crime charged. Such a shift of this burden to the petitioner in the course of the trial renders the trial fundamentally unfair. *Johnson v. Wright, supra,* at 831. I therefore concur with the conclusion of the Eighth Circuit that "[i]f inconsistent meanings are conveyed by the instruction, whereby a jury could derive an erroneous understanding of the burden, it is difficult to reason that a reasonable doubt does not exist as to the prejudice involved." *Stump v. Bennett, supra,* at 122.

The application for a writ of habeas corpus is granted and the judgment of the Erie County Court is hereby vacated. Petitioner shall be released from the custody of the New York State Department of Correctional Services unless, within sixty days of the

---

6. Even this language might be subject to some misinterpretation. The best approach would be for the court to rely solely on the statutory language and to instruct that, when an alibi defense is raised at trial, "the people have the burden of disproving such a defense beyond a reasonable doubt." New York Penal Law § 25.00.

date of this order, further proceedings on the original indictment are initiated.

Certificate of probable cause is granted.

So ordered.